Argued and submitted October 21, 1994, rule held valid January 4, 1995

OREGON FUNERAL DIRECTORS ASSOCIATION,
an Oregon corporation;
Oregon Cemetery Association, an Oregon corporation;
Uniservice Corporation, an Oregon corporation;
Niswonger-Reynolds, Inc., an Oregon corporation;
Sunset Hills Memorial Park, an Oregon corporation;
and B. Douglas Pratt,
*Petitioners,*

*v.*

OREGON STATE MORTUARY
AND CEMETERY BOARD,
an administrative agency of
the State of Oregon,
*Respondent.*

(CA A82355)

888 P2d 104

Dean N. Alterman argued the cause for petitioners. With him on the brief was Kell, Alterman & Runstein.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge,* and Richardson, Chief Judge, and Leeson, Judge.

LEESON, J.

---

* Riggs, P. J., *vice* Rossman, P. J., retired.

## LEESON, J.

Petitioners challenge the validity of an amendment to OAR 830-20-040, a rule of the Oregon State Mortuary and Cemetery Board (Board), that raised the license fees for groups and individuals under the Board's jurisdiction. ORS 183.400. We hold that the rule is valid.

The Board regulates the practices of funeral service practitioners, embalmers, mortuaries, cemeteries and crematoriums, all of which must be licensed. ORS 692.320. The Board is authorized to charge license fees, which are used to help offset the expenses of administering the Board's regulatory programs. ORS 692.160; ORS 692.375. The rule challenged here resulted from recent legislative changes in the licensing fee statutes.[1]

Petitioners contend that the rule was not adopted in compliance with applicable rulemaking procedures. Specifically, they argue that the notice of rulemaking was inadequate. ORS 183.400(4)(c). Under ORS 183.335(10)(a), "[n]o rule is valid unless adopted in substantial compliance with the provisions of this section * * *." ORS 183.335(2)(b)(E) provides that the notice of rulemaking shall include:

> "A statement of fiscal impact identifying state agencies, units of local government and the public which may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of the proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected."

As pertinent, the Board's Statement of Need and Fiscal Impact provided:

---

[1] The legislature amended ORS chapter 692 to change the licensing schedule from an annual to a biennial basis beginning in 1994, which necessitated a change in the fee assessment. The legislature also amended ORS 692.160 to provide for certain additional fees and restructured the categories of license fees. It also authorized an increase in the Board's "death registration" fee from $5.00 to $7.00, effective until June 30, 1993. Because of the June 30 limitation on the $7.00 charge, the Board had a projected budget deficit of $100,000.

"2. Need for the rule amendment. ORS 432.307(9) authorizes the State Registrar who accepts the final filing of the death certificate to collect a fee of $5 to be deposited to the credit of the account under ORS 692.375. This was amended by the 1989 Legislature to increase to $7 commencing January 1, 1991 and ending June 30, 1993. The Board lost approximately one-fifth ($100,000) of its anticipated revenues for the 1993-95 biennium when the $2.00 death registration fee increase, approved in 1989, was allowed to sunset on June 30, 1993. The Board's budget, as approved in Senate Bill 5549, assumed continuation of the death registration fee revenues. The Board has reviewed its fee structure and is proposing to implement a permanent funeral establishment and immediate disposition company license renewal fee increase beginning 1994. The Board is proposing they [sic] replace the loss of death registration filing fees by imposing a portion of the license renewal fee in the same amount ($2.00 per death registration filed). The $2.00 fee will be collected monthly. The increased fees are expected to generate a sufficient ending balance to fund operations until other fees are received in December 1995. The fee will continue the agency's practice of charging establishments according to the volume of their operations. Thus, small facilities will continue to pay a lower license issuance and renewal fee than larger operations.

"* * * * *

"4. Fiscal and Economic Impact:

"(a) Due to the loss of revenue referred to in 2. above, the fee dropped back to $5 as of July 1, 1993 creating a projected biennial loss of revenue to the Board in the amount of $100,000. This loss of revenue would have a negative impact on the Board's services and programs. The Board proposed legislation, HB 2100 to continue the death registration filing fee at $7.00 permanently. This bill was in committee upon adjournment of the legislature.

"* * * * *

"(c) 'Death Care Businesses' and individuals licensed in the industry will pay higher fees. Businesses generally pass these costs on to the consumer. For example, most funeral establishments and immediate disposition companies list the $7.00 'death registration filing fee' charge on their price list."

Petitioners argue that the notice failed to meet the requirements for the fiscal impact statement for three reasons. They

contend that the statement (1) did not give "the dollar figures" of the economic impact on the public, (2) did not quantify the fiscal effects on business, and (3) did not identify units of local government that might be economically affected or quantify costs as to them. Thus, they argue, the rule must be declared invalid.

The Board responds that the notice, as a whole, alerted petitioners and other licensees so that they were able to testify at the rulemaking hearing about the potential impact.[2] It maintains that petitioners have failed to show any prejudice by the claimed deficiencies and that, at the very least, the notice "substantially complied" with ORS 183.335-(2)(b)(E).

■ We reject the Board's contention that the test for compliance with the requirements of ORS 183.335(2)(b)(E) is whether petitioners have demonstrated prejudice. The Board's reliance on *Clark v. Shumacher*, 103 Or App 1, 795 P2d 1093 (1990), for that conclusion is misplaced. There we held that publication of the notice of rulemaking by the Department of Corrections was technically deficient. We noted that, despite the deficiencies, inmates had appeared at the hearing. We concluded that the petitioner had failed to establish prejudice by the Department's failure to comply fully with the publication requirements. Here, petitioners challenge the fiscal impact statement. Under ORS 183.335-(2)(b)(E), the notice must include the statement, and the statement must comply with the provisions of the subsection. *Dika v. Dept. of Ins. and Finance*, 312 Or 106, 110, 817 P2d 287 (1991).

Relying on *Dika v. Dept. of Ins. and Finance, supra*, and *Troutlodge, Inc. v. Dept. of Fish & Wildlife*, 113 Or App 123, 830 P2d 622, *rev den* 314 Or 392 (1992), petitioners contend that compliance with the requirements of ORS 183.335(2)(b)(E) means that the fiscal impact statement must contain either a direct statement that sets out the total dollar amount of the impact or a statement that the amount

---

[2] The Oregon Funeral Directors Association sent its members a "Bulletin" that listed the proposed fee schedule. It encouraged its members to oppose it, and the Association submitted testimony, as did the Oregon Cemetery Association.

cannot be quantified. In *Dika*,[3] the Oregon Supreme Court held that the challenged rule was invalid because the only statement of economic impact was that there would be an economic impact. In *Troutlodge*, we relied on the court's explanation in *Dika* and held that the economic impact statement met the purpose of ORS 183.335, because the statement explained that, although there would be an economic impact, that impact could not then be quantified.

 We do not agree with petitioners that *Dika* and *Troutlodge* stand for the proposition that the fiscal impact statement must give a total dollar amount or a reason why the amount cannot be determined. The notice of fiscal impact that must be given under ORS 183.335(2)(b)(E) is an "estimate." Whether a notice of proposed rulemaking substantially complies with the requirements of ORS 183.335 must be measured against the purpose of the notice, which is to "state the subject matter and purpose of the intended action in sufficient detail to inform a person that the person's interest may be affected * * *." ORS 183.335(2)(a). Although including a fiscal impact statement is mandatory, there is no requirement that the statement be read in isolation from other information provided in the notice. If the statement, when considered with the other information, is sufficient to notify persons who might be economically affected to evaluate their positions, then the purpose of providing protection against arbitrary and inadequately publicized governmental conduct has been met. *See Dika v. Dept. of Ins. and Finance, supra,* 312 Or at 109.

 That purpose was satisfied here. The fiscal statement alerts businesses that the proposed rule will result in higher fees and informs them that the economic impact is one that generally is passed on to the public. The content of the statement provides the explanation that $2.00 of the license renewal fee would be collected to fund Board operations and that the fee changes would have a greater impact on larger facilities. The statement also informs the public that the rule will affect them, because the industry practice is to pass on such increases to the public. The information is sufficient that the public and affected businesses could assess their

---

[3] At that time, the statute was codified at ORS 183.335(2)(b)(D).

particular positions and financial situations and determine the likely fiscal impact on them. *See Assn. of Oregon Loggers v. Dept. of Ins. and Finance*, 130 Or App 594, 883 P2d 859, *rev den* 320 Or 493 (1994); *Troutlodge, Inc. v. Dept. of Fish & Wildlife, supra*, 113 Or App at 127.

■ We also do not agree with petitioners that the notice failed to alert any units of local government that might be affected. A city, county or municipal corporation operating a cemetery must be licensed by the Board. ORS 692.025(6). The Board newsletter, in which the notice appeared, was sent to all licensees and provided information about possible economic impacts on any government operating a cemetery.

■ Petitioners also argue that the rule is invalid, because the notice did not adequately describe the challenged amendments. They argue that there was insufficient information to inform individuals such as funeral service practitioners, embalmers and limited funeral service practitioners that the rules might affect them. The summary portion of the notice stated that the rule "amends [the] fee schedule for implementation of House Bills 2098 and 2099." Those bills recategorized licenses and changed the assessment period for *all* licensees, not just funeral establishments. In addition, the fiscal impact statement noted: " 'Death Care Businesses' and individuals licensed in the industry will pay higher fees." Informing a person that interests might be affected does not require that exhaustive details of a proposed rule be included in the notice. *See Bassett v. Fish and Wildlife Comm.*, 27 Or App 639, 556 P2d 1382 (1976). The notice provided sufficient information to alert interested individuals and, as a result of the notice, interested persons did appear at the hearing and present their views to the agency. *See Clark v. Schumacher, supra*; *Smith v. Dept. of Corrections*, 105 Or App 61, 804 P2d 482 (1990). The notice substantially complied with the requirements of ORS 183.335.

Rule held valid.