Argued and submitted January 9, OAR chapter 918, division 90,
OAR 918-001-0040, OAR 918-001-0120, OAR 918-001-0130, OAR 918-020-0070,
and OAR 918-020-0090 declared invalid April 10, 2002

## THE BUILDING DEPARTMENT, LLC,
an Oregon limited liability company,
*Petitioner,*

*v.*

## DEPARTMENT OF CONSUMER AND
## BUSINESS SERVICES,
*Respondent.*

### A112196

43 P3d 1167

Jeffrey E. Potter argued the cause for petitioner. With him on the briefs was Gardner, Honsowetz, Potter, Budge & Ford.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner seeks judicial review of rules promulgated by respondent Department of Consumer and Business Services in response to Senate Bill 587 (1999).[1] Those rules established, *inter alia*, a licensing requirement for nonmunicipal providers of plan review and building inspection services. Petitioner argues that respondent, in adopting the challenged rules, exceeded its statutory authority and failed to comply with applicable rulemaking procedures. *See* ORS 183.400 (on judicial review, court must declare rule invalid if it is unconstitutional, exceeds the statutory authority of the agency, or was not adopted in compliance with applicable rulemaking procedures). We agree with petitioner that the challenged rules are invalid because their notices of proposed rulemaking did not include legally adequate fiscal impact statements. ORS 183.335(2)(b)(E). Accordingly, we declare the rules invalid.

The relevant facts are undisputed. Respondent is the state agency charged with overseeing the administration of the state building code. In 1999, the legislature adopted Senate Bill 587, which, among other things, required respondent to establish a licensing system for specialty code inspectors, plan reviewers, and the businesses that employ them. Or Laws 1999, ch 1045, § 3. In response to Senate Bill 587, respondent initiated two rulemaking proceedings that are the genesis of this dispute. In the first proceeding, respondent adopted rules to establish "requirements for business registration and licensing of third-party plan review and inspection providers." In the second proceeding, the adopted rules created a mechanism for administrative appeal of decisions by local building officials, and established time lines for plan reviews involving the one- and two-family dwelling specialty code.[2]

On judicial review, petitioner challenges the rules promulgated by respondent in response to Senate Bill 587 on

---

[1] *See* Or Laws 1999, ch 1045.

[2] Collectively, those two proceedings created all of OAR chapter 918, division 90, OAR 918-001-0120, and OAR 918-001-0130, and amended OAR 918-001-0040, OAR 918-020-0070, and OAR 918-020-0090.

both substantive and procedural grounds. Substantively, petitioner's fundamental argument is that respondent exceeded its statutory authority when it defined the terms "employed" and "employee" to encompass only individuals working directly for the state or municipality who have completed a tax withholding exemption certificate. Procedurally, petitioner argues, *inter alia*, that the fiscal impact statements included in respondent's notices of proposed rulemaking are legally inadequate and that, consequently, the resultant rules are invalid.

■    Because it is dispositive, we begin with petitioner's procedural challenge to the adequacy of the fiscal impact statements. *See Planned Parenthood Assn. v. Dept. of Human Resources*, 297 Or 562, 565, 687 P2d 785 (1984) (in analyzing the lawfulness of administrative action, courts should first consider arguments based on the scope of the agency's authority, then address procedural issues, and finally consider whether the "substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered"). Petitioner argues that the two fiscal impact statements prepared by respondent and included in its notices of proposed rulemaking fail to substantially comply with the requirements of ORS 183.335(2)(b)(E). That statute requires, in relevant part:

> "A statement of fiscal impact identifying state agencies, units of local government and the public which may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of the proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected."

In this case, the first challenged fiscal impact statement, which pertains to respondent's proposed rules regarding registration and licensure, stated:

> "The division recommends rules be adopted to implement SB 587, including fees for the registration of businesses performing plan reviews and inspections, and

for licensing individuals who perform plan reviews and inspections who do not work for a municipality or the division. The registration and licensing fees are necessary to cover BCD administration costs related to the review and approval of businesses and individuals who provide plan reviews and inspections.

"It projects a workload impact due to the implementation of the licensing system. The division estimates $10,000 will be needed to modify the existing licensing computer program to accommodate the new business registration and license classifications. There are also one-time Attorney General costs to support the development of the rules and establishing the program. The division anticipates approximately 50 businesses registering and 100 individuals requesting licensure under these rules. With these estimates, $30,000 will be generated the first biennium and approximately $15,000 each additional biennium. These revenues will be used to partially defray the costs and expenditures related to the workload of reviewing applications, the quality assurance manuals, data entry and making the information available statewide. There will be a need for only minimal training for employees due to changes in forms and processes. *An economic impact may be realized by the public and industry; however, whether there is an increase or decrease is undetermined at this time.*" (Emphasis added.)

The second statement, for the rules relating to time lines, appeals, and monitoring, read:

"The division recommends rules be adopted to implement SB 587, including fees for appeals that go directly to the specialty code program, and for monitoring businesses and individuals who perform plan review and inspection services.

"The rules develop the general process for appealing a local building official's decision to the appropriate state specialty code chief inspector. The rules establish a $50 appeal fee. The revenue generated from this fee will partially defray the costs associated with the increased workload to implement this appeals process, and will have minimal impact on cash balances.

"The rules also establish the requirement for jurisdictions who administer a building inspection program to

establish time lines for plan review services within their operating plans. Jurisdictions, including the division, will experience some workload increase to ensure their operating plans are updated to reflect the new requirements. The division will also experience a one-time workload increase to review the updated operating plans. Local governments may be impacted as some time may be required to accept plan reviews from registered businesses, if they are unable to meet statutory plan review time lines, resulting in a loss of revenue. *An economic impact may be realized by the public and industry; however, whether there is an increase or a decrease is undetermined at this time.*" (Emphasis added.)

Petitioner invokes *Dika v. Dept. of Ins. and Finance*, 312 Or 106, 111, 817 P2d 287 (1991), and contends, particularly, that the fiscal impact statements here are invalid because "they did not quantify the rules' economic impact on the public or businesses, nor did they provide any explanation for failing to do so." In petitioner's view, the unelaborated declaration that the fiscal impact on the public and industry "is undetermined at this time" renders those statements legally insufficient:

"Stating that 'whether there is an increase or a decrease is undetermined at this time' is not an explanation unless a simple 'we don't know,' *without any attempt to explain why* 'we don't know' passes muster under the statute. The statement does not say 'it is undetermined *because we do not have sufficient data,*' or 'it is undetermined *because the costs cannot be quantified at this time,*' or even 'it is undetermined *because our computers were down when we prepared the notices.*' It only states the effect 'is undetermined'— period. That is an insufficient fiscal impact statement." (Emphasis in original.)

Respondent counters that the fiscal impact statements here are adequate because, when read in conjunction with the entire notice, they satisfy the purpose of the fiscal impact statement requirement—*viz.*, to alert potentially interested parties that they may be economically affected by the rules. We agree with petitioner.

In *Dika*, the court considered the adequacy of a fiscal impact statement for a rule setting the maximum allowable

fees for the copying of materials relevant to workers' compensation proceedings. That statement declared, without elaboration: "The following entities are economically affected: (a) workers' compensation insurers and (b) medical vendors." In concluding that that statement was inadequate, the court first emphasized that the purpose of the fiscal impact statement is to act as a protection "against arbitrary and inadequately informed governmental conduct." *Dika*, 312 Or at 109. The court then explained why the fiscal impact statement at issue in that case failed to satisfy the statutory requirement:

> "ORS 183.335(2)(b)(D) requires that a fiscal impact statement provide 'an estimate of [the] economic impact' upon the public, as well as on governmental units, that will be caused if the rule is adopted. Here, the agency's notice indicates that there will be such an impact. However, its statement of anticipated impact does not provide any quantitative estimate of economic impact on anyone. In that regard, the statute requires that the agency 'shall utilize available information to project any significant economic effect' on businesses, should the rule be adopted. The statement does not attempt to do that, *nor does it provide any explanation for failing to do so, such as those that might be related to inadequacy of 'available information' or that would be appropriate where there will be no fiscal impact*." *Id.* at 110 (emphasis added).

Thus, under *Dika*, a fiscal impact statement must use available information to estimate economic impact on all affected parties or, if no such estimate is possible, explain why that is so.

■    Since *Dika*, we have emphasized both the fundamental notice function of the fiscal impact statement requirement and the fact that the overarching objective of the requirement is to provide protections against arbitrary and inadequately publicized government conduct. For example, in *Troutlodge, Inc. v. Dept. of Fish & Wildlife*, 113 Or App 123, 830 P2d 622, *rev den* 314 Or 392 (1992), we explained that a fiscal impact statement will be sufficient so long as it notifies potentially affected parties such that they can "appear at the hearing and give the agency the information that it lacked in order to make an informed decision." *Id.* at 126-27. Similarly, in

*Oregon Funeral Directors v. Mortuary and Cemetery Bd.*, 132 Or App 318, 888 P2d 104 (1995), we explained that a fiscal impact statement satisfies the "purpose of providing protection against arbitrary and inadequately publicized government conduct" if, when considered with the other information provided in the notice of proposed rulemaking, it notifies "persons who might be economically affected to evaluate their positions." *Id.* at 323. Thus, in instances where the information provided is sufficient to allow the "public and affected businesses [to] assess their particular positions and financial situations and determine the likely impact on them," a procedural challenge to a rule based on an allegedly inadequate fiscal impact statement will fail. *Id.* at 323-24. If, however, the statement falls short of that standard, the rule must be declared invalid. *Dika*, 312 Or at 111.

Here, both fiscal impact statements issued by respondent identified that the public and building industry could be affected by the proposed rules but concluded that the exact nature of that effect was "undetermined at this time." Nothing in either the challenged fiscal impact statements or the notices of proposed rulemaking issued by respondent suffices to explain why the effect is undetermined or, more importantly, to allow potentially affected parties to evaluate their positions and understand what information, if any, respondent might need "in order to make an informed decision." *Troutlodge, Inc.*, 113 Or App at 127. In that sense, the fiscal impact statement issued by respondent failed to adequately notify interested parties and, thus, failed to satisfy the statutory objective of providing "protection[ ] against arbitrary and inadequately informed governmental conduct." *Dika*, 312 Or at 109.

In sum, we agree with petitioner that "a simple 'we don't know,' without any attempt to explain *why* 'we don't know,'" does not satisfy ORS 183.335(2)(b)(E). Accordingly, the challenged rules were not adopted in compliance with applicable rulemaking procedures, and must be declared invalid. ORS 183.400(4).[3]

---

[3] Given that disposition, we do not reach the remaining issues raised by petitioner on judicial review. *Dika*, 312 Or at 111 n 2 ("Because we hold that the rule was not validly adopted, we do not reach the remainder of the grounds for petitioners' challenge."). *See also Planned Parenthood Assn.*, 297 Or at 565 (establishing analytical framework for evaluating challenges to administrative rules).

The following rules are declared invalid: All of OAR chapter 918, division 90; OAR 918-001-0040; OAR 918-001-0120; OAR 918-001-0130; OAR 918-020-0070; and OAR 918-020-0090.