Argued and submitted February 18, OAR 150-308.515(1)(h) held invalid October 6, 2010

# OREGON CABLE TELECOMMUNICATIONS ASSOCIATION,
*Petitioner,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

Department of Revenue
A141351

240 P3d 1122

John F. Neupert argued the cause for petitioner. With him on the briefs were Ryan R. Nisle, John F. Neupert, P.C., and Miller Nash LLP.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Petitioner, the Oregon Cable Telecommunications Association (OCTA), challenges a rule promulgated by the Department of Revenue (the department), the purpose of which, according to the department, was to "clarify" that cable and Internet service providers are "communication" companies subject to central assessment for property tax purposes under ORS 308.515. OCTA claims, *inter alia*, that the rule was adopted in violation of the applicable rulemaking procedures—and is therefore invalid—because the fiscal impact statement accompanying the notice of proposed rulemaking did not include "a cost of compliance effect on small businesses affected," as contemplated by ORS 183.335(2)(b)(E) and ORS 183.336. We agree with OCTA in that regard and, accordingly, invalidate the rule. ORS 183.400(4)(c) (court shall declare rule invalid if it finds that the rule "[w]as adopted without compliance with applicable rulemaking procedures").

ORS 308.515(1) (2007)[1] requires the department to make an annual assessment for taxation purposes of

> "any property that has a situs in this state and that, except as provided in subsection (3) of this section, is used or held for future use by any company in performing or maintaining any of the following businesses or services or in selling any of the following commodities, whether in domestic or interstate commerce or both, and whether mutually, or for hire, sale or consumption by other persons:
>
> "* * * * *
>
> "(h) Communication[.]"

"Communication" is defined to "include[ ] telephone communication, telegraph communication and data transmission services by whatever means provided." ORS 308.505(2). Generally, entities that are subject to assessment under ORS 308.515 are taxed on "all property, real and personal,

---

[1] All citations in this opinion to statutes in ORS chapter 308 are to the 2007 versions, which were in effect when the rule at issue was promulgated. Those statutes were amended by the 2009 Legislative Assembly, effective January 1, 2010. *See* Or Laws 2009, ch 128.

tangible and intangible." ORS 308.510(1).[2] Property not subject to assessment by the department under ORS 308.515, on the other hand, is assessed by the county in which the property is situated, ORS 308.517(5), and that assessment does not include intangible personal property. *See* ORS 307.030(2) ("Except as provided in ORS 308.505 to 308.665, intangible personal property is not subject to assessment and taxation.").

In late 2008, the department proposed the rule in question, OAR 150-308.515(1)(h), "to provide that cable and internet service providers are companies in the communication business or companies that provide communication services and thus are subject to central assessment for property tax purposes."[3] The notice included a fiscal impact statement (described in detail below). After issuance of the original notice, the department revised the proposed rule and extended the public comment period, but did not issue a new fiscal impact statement. The rule became effective on January 1, 2009, and OCTA timely filed the present petition for judicial review under ORS 183.400(1).

■  On review, OCTA challenges the rule on procedural grounds only, asserting—in two assignments of error—that the fiscal impact statement included in the department's notice of proposed rulemaking was legally inadequate.

---

[2] ORS 308.510(1) provides, in part:

" 'Property,' as used in ORS 308.505 to 308.665, includes all property, real and personal, tangible and intangible, used or held by a company as owner, occupant, lessee or otherwise, for or in use in the performance or maintenance of a business or service or in a sale of any commodity, as set forth in ORS 308.515[.]"

[3] The rule, in its entirety, provides:

"(1) Companies engaged in communication business or service include cable companies and internet service provider companies.

"(2) 'Cable Companies' engage in a variety of communication activities, such as providing television programming, radio programming, high speed internet access, or telecommunication services.

"(3) 'Internet Service Providers' (ISPs), also referred to as Internet Access Providers (IAPs), provide internet access for a fee.

"(4) Cable companies and ISPs provide communication services via radio frequency signals transmitted through fixed optical fibers, coaxial cables (used in the transmission of high frequency signals) or satellite. These services may be wired or wireless and are provided to customers via a network system of property that typically cover multiple counties, states or countries."

Because it is dispositive, we begin with OCTA's second assignment of error—that the fiscal impact statement was deficient in that it failed to include a statement of the "cost of compliance effect on small businesses affected" as required by ORS 183.335(2)(b)(E) and ORS 183.336.[4]

Before an agency adopts a rule, it must give notice of its intended action pursuant to ORS 183.335(1), which, among other things, requires the agency to provide

"[a] statement of fiscal impact identifying state agencies, units of local government and the public which may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of the proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses *which shall include a cost of compliance effect on small businesses affected.*"[5]

ORS 183.335(2)(b)(E) (emphasis added). ORS 183.336, in turn, provides:

"(1)  The statement of cost of compliance effect on small businesses required by ORS 183.335(2)(b)(E) must include:

"(a)  An estimate of the number of small businesses subject to the proposed rule and identification of the types of businesses and industries with small businesses subject to the proposed rule;

---

[4] In its first assignment of error, OCTA contends that the fiscal impact statement was inadequate under ORS 183.335(2)(b)(E) because it did not provide a quantitative estimate of the economic effect of the rule on affected companies or the department itself, or an explanation for having failed to do so. The state responds that (1) the notice was sufficient to satisfy the purpose of the statute, *i.e.*, to alert potentially interested parties that they may be economically affected by the rule; and (2) because any potential economic impact identified by OCTA was created by the underlying statute, not the rule, the notice was sufficient. Because we invalidate the rule on the basis of petitioner's second assignment of error, we need not resolve that issue.

[5] For purposes of ORS chapter 183, "economic effect" is defined to mean "the economic impact on affected businesses by and the costs of compliance, if any, with a rule for businesses, including but not limited to the costs of equipment, supplies, labor and administration," ORS 183.310(3); the term "small business" means "a corporation, partnership, sole proprietorship or other legal entity formed for the purpose of making a profit, which is independently owned and operated from all other businesses and which has 50 or fewer employees," ORS 183.310(10).

"(b) A brief description of the projected reporting, recordkeeping and other administrative activities required for compliance with the proposed rule, including costs of professional services;

"(c) An identification of equipment, supplies, labor and increased administration required for compliance with the proposed rule; and

"(d) A description of the manner in which the agency proposing the rule involved small businesses in the development of the rule.

"(2) An agency shall utilize available information in complying with the requirements of this section."

In this case, the relevant portion of the department's notice of proposed rulemaking provides as follows:

"2. Cost of compliance effect on small business (ORS 183.336):

"a. Estimate the number of small businesses and types of business and industries with small businesses subject to the rule:

*"There are several cable and internet companies that the department will start assessing in the 2009 tax year. (There is ongoing research to ensure all appropriate companies are included.)*

"b. Projected reporting, recordkeeping and other administrative activities required for compliance, including costs of professional services:

"The rule is not expected to impose additional reporting, record keeping or other administrative activities beyond what the statute itself requires.

"c. Equipment, supplies, labor and increased administration required for compliance:

"None.

"How were small businesses involved in the development of this rule?

"The department held a series of meetings at which the central assessment statutes were discussed at length. At least one meeting focused specifically on the businesses and

services that appropriately fall under the definition of communication as outlined in the law. Cable and internet service providers were invited and several participated in those meetings. In the March 2006 Interim House Revenue Committee the department described to the committee the interpretation provided in this rule and informed the committee that the department would begin centrally assessing cable and internet service providers in the near future."

(Emphasis added.)

OCTA contends that the statement is inadequate because, among other reasons, it does not provide "[a]n estimate of the number of small businesses subject to the proposed rule," as contemplated by ORS 183.336(1)(a). The department responds that the statement comports with ORS 183.336(1)(a) because it "identifies the types of business that might be affected, and acknowledges that there are a number of those businesses that will be moved from local assessment to central assessment." Alternatively, the department argues that "[a]ny alleged 'failure' to specify or estimate the precise number of small businesses" was due to the fact that "research was ongoing to include all such businesses," and, therefore, the statement was adequate because it was based on "available information." *See* ORS 183.336(2) ("An agency shall utilize available information in complying with the requirements of this section."). We agree with OCTA that the department's statement falls short of meeting the statutory requirement.

Resolving the parties' dispute requires us to construe the meaning of ORS 183.336(1)(a), which we do by first examining the text of the statute in context, along with any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Statutory terms that are not defined are generally given their plain and ordinary meanings. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). However, words that have well-defined legal meanings are given those specialized meanings. *See, e.g., Dept. of Transportation v. Stallcup*, 341 Or 93, 99, 138 P3d 9 (2006) ("[W]e give words that have well-defined legal meanings those meanings."); *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) ("Analysis of text also includes reference

to well-established legal meanings for terms that the legislature has used.").

■     Applying those principles, we note, first, that, on its face, there can be little doubt that ORS 183.336(1) establishes the minimum content that must be included in the "statement of cost of compliance effect on small businesses" mandated by ORS 183.335(2)(b)(E).[6] The statute uses the verb "must," which, although in common usage can carry a variety of shaded meanings, *see Webster's Third New Int'l Dictionary* 1492 (unabridged ed 2002) (defining the verb "must," among other definitions, to mean "is commanded or requested to," "is urged to : ought by all means to," "is compelled by physical necessity to," "is obliged to : is compelled by social considerations to," "is required by law, custom, or moral conscience to"), generally connotes a required action when used in law. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 577-78 (2d ed 1995) (explaining that, in legal drafting, "must" is generally used in the sense of "an absolute requirement"); *id.* at 941 ("Under the American rule * * *, [must] means 'is required to' and is used primarily when an inanimate object appears as subject of the clause. * * * Under the ABC rule * * *, *must* denotes all required actions, whether or not the subject of the clause performs the action of the verb[.]"[7]). That understanding is supported by the legislative history surrounding the enactment of ORS 183.336 (discussed more fully below). Audio Recording, Senate Floor Debate, HB 3238-B, July 30, 2005, at 1:28.13 (statement of Sen Frank Shields) (explaining, as carrier of the bill, that it "adds a minimum content to the fiscal impact statements agencies are currently required to do for proposed rules"), http://www.leg.state.or.us/listn/ (accessed Sept 20, 2010).

■     We turn next to the text of the specific requirement at issue here—that the small business impact statement

---

[6] For convenience, we also refer to this statement as the "small business impact statement" in this opinion.

[7] The "American rule" and "ABC rule" refer to two approaches commonly used by legal drafters to avoid the ambiguity sometimes created by the use of the word "shall." Garner, *Modern Legal Usage* at 941. For a fuller discussion of that problem and the "horrific muddle" that has been made of verbs used to connote words of authority in legal drafting, see *id.* at 939-42.

must include "[a]n estimate of the number of small businesses subject to the proposed rule[.]" ORS 183.336(1)(a). The noun "estimate," is defined, in relevant part, to mean "the act of appraising or valuing : VALUATION, CALCULATION"; "a judgment made from usually mathematical calculation especially from incomplete data : a rough or approximate calculation (as of the number, amount, or size of anything)." *Webster's* at 779. "Number" means "an arithmetical total : sum of the units involved : AGGREGATE ⟨ of desks in the room⟩ ⟨ of people in the hall⟩"; it can also mean "an unspecified total : SEVERAL." *Id.* at 1549-50. In this case, of course, the units involved are "small businesses" as defined in ORS 183.310(10). *See* 237 Or App at 632 n 5. Thus, at a minimum, ORS 183.336(1)(a) requires the small business impact statement to include an approximate calculation of the total (even if nonspecific) small businesses subject to the proposed rule.

Here, the statement relied on by the department to satisfy that requirement states only the following:

"There are several cable and internet companies that the department will start assessing in the 2009 tax year. (There is ongoing research to ensure all appropriate companies are included.)"

As explained below, that statement is insufficient to comply with the requirements of ORS 183.336(1)(a).

First, even assuming that "several" is an adequate "estimate" for purposes of the statute—an issue we expressly do not decide—the statement fails to satisfy the statutory requirement that the estimate relate to the number of *small businesses* potentially affected by the rule. Although the statement appears under a heading in the notice that generally tracks the statutory requirement—that is, to "[e]stimate the number of small businesses and types of business and industries with small businesses subject to the rule"— nothing in the information provided by the department indicates that the "several cable and internet companies" referred to are small businesses, rather than businesses generally. Moreover, the parenthetical information included in the department's statement indicates quite clearly to the contrary: it refers to efforts being made to ensure that "*all* appropriate companies" are assessed under the proposed rule.

(Emphasis added.) Thus, viewed as a whole, the statement fails to demonstrate that the department properly focused on the number of *small* businesses, as opposed to businesses generally, that would be affected by the proposed rule. And that is precisely what is explicitly required by ORS 183.336(1)(a).

Next, the department's argument that any deficiency in the rule is excused by the fact that it was based on "available information" is unpersuasive. To be sure, ORS 183.336(2) provides that "[a]n agency shall utilize available information in complying with the requirements of this section." An essentially identical provision appears in ORS 183.335(2)(b)(E) ("In considering the economic effect of the proposed action on the public, the agency *shall utilize available information* to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected." (Emphasis added.)). ORS 183.336 is part of the same statutory scheme as ORS 183.335(2)(b)(E); thus, prior judicial interpretations of the latter inform our analysis of the former. *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 35, 147 P3d 1154 (2006) (considering prior construction of other similarly worded statutes of limitations in construing statute of limitations); *see also Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 379, 111 P3d 762 (2005), *rev den*, 339 Or 406 (the legislature's choice to continue using a particular word in amendments to a statute, when Oregon courts have previously interpreted the word "evidences an intent to maintain the interpretation set forth in those cases").

In *Dika v. Dept. of Ins. and Finance*, 312 Or 106, 817 P2d 287 (1991), the Supreme Court considered the meaning of the phrase as used in ORS 183.335(2)(b)(E)[8] in the context of an agency fiscal impact statement that identified two types of entities that would be economically affected by the proposed regulatory action, but provided no further information. The court concluded that the statutory requirement that an agency "utilize available information" to estimate the economic effect of a proposed rule means that the agency must

---

[8] At the time, the requirement was contained in ORS 183.335(2)(b)(D).

either provide a quantifiable estimate of that impact or articulate reasons why no such estimate is possible, "such as those that might be related to the inadequacy of 'available information[.]' " *Id.* at 110. Because the agency's fiscal impact statement failed to do either, the court invalidated the rule. *Id.*

In cases since *Dika*, we have focused on the policy objectives underlying ORS 183.335(2)(b)(E) to determine the adequacy of agency fiscal impact statements. For example, in *The Building Department, LLC v. DCBS*, 180 Or App 486, 492, 43 P3d 1167 (2002), we explained that the "overarching objective" of the fiscal impact statement requirement "is to provide protections against arbitrary and inadequately publicized government conduct." We thus concluded that,

> "in instances where the information provided is sufficient to allow the public and affected businesses to assess their particular positions and financial situations and determine the likely impact on them, a procedural challenge to a rule based on an allegedly inadequate fiscal impact statement will fail. If, however, the statement falls short of that standard, the rule must be declared invalid."

*Id.* at 493 (internal citations, quotation marks, and brackets omitted). Applying that rule, we then held that the fiscal impact statements at issue, which described the anticipated economic effect of the proposed rules as "undetermined at this time," were insufficient to satisfy that purpose because they failed to

> "explain why the effect was undetermined or, more importantly, to allow potentially affected parties to evaluate their positions and understand what information, if any, [the agency] might need in order to make an informed decision."

*Id.* (internal quotation marks omitted).

Notwithstanding the foregoing, the relevant context and legislative history of ORS 183.336 indicate that the small business impact statement portion of the fiscal impact statement is intended to serve a slightly different purpose than the fiscal impact statement generally. Specifically, as amplified below, the objective of the legislature in enacting ORS 183.336 was to ensure that an agency recognize and evaluate

the potential economic effect of a proposed regulatory action on small business—at least as to the particular factors listed in that statute—*at the time the rule is being developed and drafted*—so that the agency can, if appropriate under ORS 183.540, take steps to address that impact in the rule itself.

The general, unadorned requirement in ORS 183.335(2)(b)(E) that a fiscal impact statement accompanying a notice of proposed rulemaking include a statement of the "cost of compliance effect on small businesses affected" has been in effect since 1981. *See* Or Laws 1981, ch 755, § 2. At that time, the legislature also enacted ORS 183.540, *see* 237 Or App at 639-40 n 9, which required an agency to take certain ameliorative actions if the agency's economic effect analysis showed a significant adverse effect on small businesses. Or Laws 1981, ch 755, § 4.

It was not until 2005, however, that the legislature enacted ORS 183.336, explicitly defining the components required to be included in the small business impact statement. That provision was enacted as part of HB 3238, which represented a merger of concepts from three separate House bills dealing with regulatory reform. Patrick Allen, from the Office of Regulatory Streamlining, who worked with the authors of the three original bills to merge the concepts, testified before the House Elections and Rules Committee that, among other broad themes, the bill as merged "tries in a number of ways to help agencies do a better job of assessing the impact of rules on small business and to adjust for those impacts." Audio Recording, House Committee on Elections and Rules, HB 3238, June 14, 2005, at 20:10 (statement of Patrick Allen), http://www.leg.state.or.us/listn/ (accessed Sept 20, 2010). In that regard, the bill also amended ORS 183.540 to provide that it is the small business impact statement specifically—rather than an agency's economic impact analysis generally—that determines whether an agency must make efforts to reduce the impact of the rule on small business.[9]

---

[9] ORS 183.540, as amended by HB 3238, provides:

"If the statement of cost of compliance effect on small businesses required by ORS 183.335(2)(b)(E) shows that a rule has a significant adverse effect upon small business, to the extent consistent with the public health and safety purpose of the rule, the agency shall reduce the economic impact of the rule on small business by:

Representative Kim Thatcher carried the bill on the House floor, explaining to her colleagues that it would make several improvements to the Administrative Procedures Act, including "improv[ing] the quality of agency fiscal impact statements" and "helping agencies identify major impacts of proposed rules on small business early on in the rulemaking process so that there is plenty of opportunity to make changes before the rule goes into effect." Audio Recording, House Floor Debate, HB 3238-A, June 30, 2005, at 52:51 (statement of Rep Kim Thatcher), http://www.leg.state.or.us/listn/ (accessed Sept 20, 2010). She also noted that the bill's drafters had worked hard to create a bill that

> "will not unduly impede an agency's ability to enact needed regulations while ensuring that those regulations benefit from maximum attention to their impacts on small business and maximum input from stakeholders of all kinds in their drafting and development."[10]

*Id.* at 54:44.

In the Senate, Senator Frank Shields was the carrier of HB 3238. He explained during floor debate on the bill that it "makes * * * important but evolutionary changes in the way agencies adopt regulations," among other things, adding a minimum content to the fiscal impact statement that agencies are required to prepare and expanding the duties of

---

"(1) Establishing differing compliance or reporting requirements or time tables for small business;

"(2) Clarifying, consolidating or simplifying the compliance and reporting requirements under the rule for small business;

"(3) Utilizing objective criteria for standards;

"(4) Exempting small businesses from any or all requirements of the rule; or

"(5) Otherwise establishing less intrusive or less costly alternatives applicable to small business."

[10] The bill as passed by the House, HB 3238-A, contained more comprehensive changes to rulemaking procedures than were ultimately enacted by the legislature. The bill was substantially revised in the Senate; however, the provision that became ORS 183.336 remained relatively unchanged throughout that process. Specifically, subsection (1)(a) of the statute, as it passed the House, required the small business impact statement to both estimate the number of small businesses subject to the rule and *identify* those businesses. The latter requirement was changed in the Senate to the existing language, which, as noted, requires, in addition to the estimate, an identification of the "*types of* businesses and industries with small businesses subject to the rule." (Emphasis added.)

advisory committees to include advising the agency on "the relative impact of proposed rules on small businesses, and the way an agency can comply with existing statutes requiring [that] those impacts be minimized." Audio Recording, Senate Floor Debate, HB 3238-B, July 30, 2005, at 1:28:13 (statement of Sen Frank Shields), http://www.leg.state.or.us/ listn/ (accessed Sept 20, 2010).[11]

The preamble to the bill further informs our understanding of the legislature's intention in enacting ORS 183.336. *See, e.g., Strunk v. PERB*, 338 Or 145, 162-63, 108 P3d 1058 (2005) (describing the legislature's primary motivation in enacting the 2003 PERS legislation by reference to the preamble); *Havi Group LP v. Fyock*, 204 Or App 558, 564, 131 P3d 793 (2006) ("Included in pertinent context are statements of statutory policy."); *Warburton v. Harney County*, 174 Or App 322, 329, 25 P3d 978, *rev den*, 322 Or 559 (2001) ("While it is true that a policy statement * * * should not provide an excuse for delineating specific policies not articulated in the statutes, such a general purpose statement may serve as a contextual guide for the meaning of a particular statute."). Here, the preamble indicates that the legislature was concerned about the "unnecessary and disproportionately burdensome demands" that fall on small businesses as a result of uniform regulatory requirements. *See* Or Laws 2005, ch 807 (preamble). The legislature also recognized that "alternative regulatory approaches that do not conflict with the stated objective of applicable statutes may be available to minimize the adverse economic effect of rules on small businesses," and concluded that agencies should, among other things, "examine the effect of proposed and existing rules on small businesses." *Id.*

What we glean from that history and context is that the legislature, in enacting ORS 183.336, wanted to ensure

---

[11] In addition to enacting ORS 183.336, the bill made other changes to address the effect of regulatory action on small businesses. For example, it amended ORS 183.333, to provide that, if an agency appoints an advisory committee to assist in the rulemaking process, the agency "shall seek the committee's recommendations on whether the rule will have * * * a significant adverse impact on small businesses. If the committee indicates that the rule will have a significant adverse impact on small businesses, the agency shall seek the committee's recommendations on compliance with ORS 183.540." Or Laws 2005, ch 807, § 4. As noted above, the bill also amended ORS 183.540. *Id.* § 6.

that agencies informed themselves—at least in the particulars described in that statute—of the potential economic effect of a proposed rule change on small business at the time the rule was being drafted, rather than after the fact. In doing so, the legislature hoped to maximize the opportunities for an agency to reduce that effect on small businesses where appropriate. Understanding the breadth of a proposed rule change as it relates to small business—that is, estimating just how many small businesses would be subject to its reach—was one of the particulars that the legislature determined was important to further that objective.

■    In light of that statutory objective, if an agency is unable, based on available information, to provide the data required by ORS 183.336, the agency must, at least, explain why that is so. Here, the department's statement failed to explain why it was unable to project the number of small businesses that would be subject to the proposed rule. Simply stating that "[t]here is ongoing research to ensure all appropriate companies are included" is insufficient because, contrary to the intent of the statute, it does nothing to show that the agency—in drafting and developing the rule—made the necessary effort to ascertain the required information. As in *The Building Department, LLC*, given the purpose underlying ORS 183.336, it is not enough for an agency to say "we don't know," without any attempt to explain "why we don't know." 180 Or App at 493. In short, the department's small business impact statement fails to demonstrate that the agency engaged in the type of informed rulemaking contemplated by the legislature when it enacted ORS 183.336.

In sum—and whatever its other shortcomings—the fiscal impact statement issued by the department in its notice of proposed rulemaking for OAR 150-308.515(1)(h), at a minimum, failed to include a legally sufficient small business impact statement as required by ORS 183.336. Accordingly, we must invalidate the rule. ORS 183.400(4)(c) (subject to an exception not applicable here, *see* ORS 183.400(6), the court shall declare a rule invalid if it finds that it was adopted without compliance with the applicable procedures).

OAR 150-308.515(1)(h) held invalid.