Argued and submitted December 16, 2010, affirmed February 23, 2012

OREGON AFSCME COUNCIL 75,
LOCAL #2503,
*Respondent,*

*v.*

HOOD RIVER COUNTY,
*Petitioner.*

Employment Relations Board
UP1108; A143531

232 P3d 980

Nancy Hungerford argued the cause for petitioner. With her on the brief were Brian J. Hungerford and The Hungerford Law Firm.

Jason M. Weyand argued the cause for respondent. With him on the brief was Oregon AFSCME Council 75.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Petitioner Hood River County (the county) challenges a final order of the Employment Relations Board (ERB) in which ERB ruled that the county committed an unfair labor practice by refusing to withhold and remit union dues from union members' paychecks. The county seeks judicial review of that decision, ORS 183.482(8),[1] and contends that ERB incorrectly concluded that the county violated ORS 243.672(1)(b) and (f)[2] when it refused to comply with a demand by respondent Oregon AFSCME Council 75, Local #2503 (the union), that the county calculate and deduct dues based on a specified percentage of union members' base salaries. We affirm.

The following facts are undisputed and are taken from ERB's order. The union is part of a statewide organization, AFSCME Council 75. In late 2007, AFSCME International and AFSCME Council 75 voted to have all Oregon bargaining units change their dues structure from a flat rate to a percentage of salary pursuant to which the dues paid by each

---

[1] Pursuant to ORS 183.482(8),

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if the court finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

[2] Under ORS 243.672(1)(b), it is an unfair labor practice for a public employer or its representative to "[d]ominate, interfere with or assist in the formation, existence or administration of any employee organization." ORS 243.672(1)(f) provides that it is an unfair labor practice for such an employer to "[r]efuse or fail to comply with any provision of ORS 243.650 to 243.782."

employee would be proportional to the employee's base salary. Such percentage-based dues are common among public sector labor organizations, and some of the largest public sector unions in Oregon have dues structures of this type.

In October 2007, the union sent a letter to the county detailing the new percentage-based dues structure and requesting that deductions in employee pay be made based in accordance with it:

> "[M]inimum Dues Rates for full time employees has been set by AFSCME International and Council 75 to be 1.27% of the base salary for each member with a minimum of $15.00 and a maximum of $55.00 effective January 1, 2008. Local 2503 requests that an additional $3.00 per member be deducted. Please change our deductions to the new rates effective January 1, 2008."

The AFSCME executive director sent an additional letter shortly thereafter explaining the new dues structure. In addition, at least one employee submitted a written request to the county asking that union dues be deducted from his or her paycheck under the union's new percentage-based dues structure. However, the county refused to implement the change. In a letter to the union, the county cited, in support of its refusal, the administrative burden and cost of doing so. The county stated that, although it would not itself compute the deductions for union dues, it would attempt to work with the union if the union would do dues calculations and provide the county with the annual dues for each employee before December 15.

Oregon AFSCME consists of a large number of public employee local unions and represents employees in many counties across the state. It also represents employees of numerous state agencies and cities of various sizes. Hood River County was the only employer that refused to implement the new percentage-based dues structure; all other employers agreed to calculate and deduct the dues as requested.

After the county initially refused to implement the new dues structure, the parties' legal representatives exchanged correspondence. The county maintained its position that it would not calculate the new dues, and eventually,

in February 2008, the union filed a grievance with the county. The county, however, denied the grievance. As reasons for doing so, the county noted that (1) implementing the percentage-based dues (as opposed to "a uniform amount per employee") would require a change to the payroll software, which its software vendor priced at $32,000; and (2) calculating the deductions by hand would "require copious amounts of time and money" and was "not feasible." However, it stated that changing the payroll software was viable if "AFSCME is willing to pay for the cost of this programming change." Further, the county indicated that it would be "happy to receive and directly enter the dues withholding amounts as calculated by AFSCME."

Thereafter, in March 2008, the union filed a complaint with ERB alleging that the county's refusal to withhold the percentage-based dues as requested constituted an unfair labor practice. Eventually, after receiving briefs and stipulated facts and hearing oral argument, ERB issued its final order in August 2009. ERB concluded that the county had violated ORS 243.672(1)(b) and (f) when it refused to make the dues deductions as requested. The county seeks judicial review of that order.

On review, the county contends that ERB erred in its two legal determinations. That is, in its first assignment of error, the county challenges ERB's conclusion that the county "violated ORS 292.055(1), and therefore ORS 243.776, and therefore ORS 243.672(1)(f)" by refusing to calculate and deduct the union dues as requested. In its second assignment of error, the county challenges ERB's conclusion that the county violated ORS 243.672(1)(b) when it refused to calculate and deduct the percentage-based dues.

We begin with the county's first assignment of error. As noted, under ORS 243.672(1)(f), it is an unfair labor practice for a public employer such as the county to "[r]efuse or fail to comply with any provision of ORS 243.650 to 243.782." Furthermore, under ORS 243.776, "rights and responsibilities prescribed for state officers and employees in ORS 292.055 shall accrue to employees of all public employers."

Taken together, those statutes make a public employer's violation of ORS 292.055 an unfair labor practice under ORS 243.672(1)(f).[3]

ORS 292.055(1) provides:

"Upon receipt of the request in writing of a state officer or employee so to do, the state official authorized to disburse funds in payment of the salary or wages of such state officer or employee each month shall deduct from the salary or wages of such officer or employee the *amount of money indicated* in such request, for payment thereof to a labor organization as the same is defined in ORS 243.650."

(Emphasis added.) According to the county, ERB's conclusion that the county's actions violated ORS 292.055 is erroneous because it rests on an incorrect interpretation of the word "amount" as used in the statute. According to the county, the statute does not obligate a public employer to calculate the dues to be deducted. Rather, under the county's narrow interpretation, the dues are not an "amount" under the statute unless they are a single set dollar value supplied by the union. The union responds that an "amount" need not "be a finite number[;] it can be a number derived through a simple calculation such as the one utilized by the [u]nion in setting its dues amount."

Thus, as framed by the parties, the issue is whether the percentage-based dues deduction requested from the county was an "amount of money indicated" under ORS 292.055. To resolve that issue, which is one of statutory construction, we examine the text of the statute in context, along with any helpful legislative history provided by the parties and, if necessary, by applying relevant canons of statutory construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In the absence of a statutory definition, we give statutory terms their plain and ordinary meanings. *PGE*, 317 Or at 611.

---

[3] As the county puts it, "a public employer's violation of ORS 292.055 would create a violation of ORS 243.776, which would in turn constitute an unfair labor practice pursuant to ORS 243.672(1)(f)."

Here, because the term "amount" as used in ORS 292.055 is not defined by statute, we turn to the term's plain meaning. The word "amount" is fairly broadly defined. It refers to a "total number or quantity : AGGREGATE * * * SUM, NUMBER * * * the sum of individuals * * * [or] the quantity at hand or under consideration." *Webster's Third New Int'l Dictionary* 72 (unabridged ed 2002). A sum is, among other things, "an indefinite or specified amount of money." *Id.* at 2289. Rather than referring only to a set quantity, the use of the word "amount" may be indicative of "accumulative or combinative processes." *Id.* at 2289; *see also Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 636, 240 P3d 1122 (2010) (The term "number" can mean " 'an arithmetical total : sum of the units involved' " and it "can also mean 'an unspecified total[.]' " (quoting *Webster's* at 1549-50)). Thus, under its plain meaning, the term "amount" does not refer only to a single predetermined number, as opposed to the result of a specified calculation. Instead, the term is a fairly broad one that refers to some quantity. Although a predetermined dollar value—such as a request for a deduction of $30 for each employee—would constitute an "amount" under the statute, so too would a percentage or clear formula—such as a request for a deduction of 1.27 percent of each employee's pay—the application of which would give rise to a certain dollar value.

Furthermore, the statutory phrase in which the term "amount" is used points to a broader definition than that advocated by the county. That is, under ORS 292.055(1), the county was required to deduct from employees' wages an "amount of money indicated" in a written request. To "indicate" means to point "toward with more or less exactness." *Webster's* at 1150. The union's request for deductions from employee pay to be made in accordance with the simple formula provided to the county—that is, a deduction of a set percentage of base pay plus $3—pointed toward a sum of money to be deducted from each employee's paycheck. The county, based on information in its possession (each employee's base pay), had only to apply the formula to come up with the specific dollar value amount of the deduction for each employee. Thus, in our view, the deduction requested was an "amount of money indicated" within the meaning of ORS 292.055(1). It

follows that the county was required to deduct the dues as requested and ERB did not commit legal error when it determined that the county committed an unfair labor practice under ORS 243.672(1)(f) when it refused to do so.

We also reject, without extended discussion, the county's second assignment of error, in which it asserts that ERB incorrectly concluded that the county violated ORS 243.672(1)(b) when it refused to implement the dues structure specified by the union. As noted, ORS 243.672(1)(b) provides that it is an unfair labor practice for a public employer to "[d]ominate, interfere with or assist in the formation, existence or administration of any employee organization." ERB concluded that the county's actions interfered with the existence and administration of the union.

In an argument that hinges on its position that it was not required to implement a percentage-based dues structure, the county contends that its refusal to deduct the specified dues did not interfere with the union because it "did not necessarily deprive the [u]nion of any financial support from the unit members." Although the county appears to concede that a refusal to make payroll deductions for union dues would constitute an interference with the union's existence and administration, the county contends that it did not refuse to make deductions. Rather, in the county's view, it simply refused to perform the union's calculations, and any revenue lost by the union was therefore the result of the union's own actions. However, in view of our conclusion that the county was required to deduct the percentage-based dues as requested, we also conclude that its failure to do so constituted an interference with the existence and administration of the union pursuant to ORS 243.672(1)(b). Contrary to the county's position, its failure to deduct dues as requested deprived the union of its members' financial support. Thus, ERB properly concluded that the county's refusal constituted an unfair labor practice under ORS 243.672(1)(b).

Affirmed.