No. 156 March 6, 2024 349

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CITY OF CORNELIUS,
City of Forest Grove, City of Grants Pass,
City of Happy Valley, City of Hillsboro, City of Keizer,
City of Medford, City of Oregon City, City of Sherwood,
City of Springfield, City of Troutdale, City of Tualatin,
City of Wood Village, Marion County,
Oregon Home Builders Association,
Oregon Business & Industry Association,
Oregon Realtors, and Oregon Trucking Associations, Inc.,
*Petitioners,*

*v.*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT and
the Land Conservation and Development Commission,
*Respondents.*
A180037 (Control), A180153

Argued and submitted July 12, 2023.

David O. Bechtold argued the cause for petitioners City of Cornelius, City of Forest Grove, City of Grants Pass, City of Happy Valley, City of Hillsboro, City of Keizer, City of Medford, City of Oregon City, City of Sherwood, City of Springfield, City of Troutdale, City of Tualatin, City of Wood Village, and Marion County. Also on the briefs were Greg A. Hibbard and Northwest Resource Law PLLC.

J. Aaron Landau argued the cause for petitioners Oregon Home Builders Association, Oregon Business & Industry Association, Oregon Realtors, and Oregon Trucking Associations, Inc. Also on the briefs were Julian Marrs and Harrang Long P.C.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondents. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Stephen L. Madkour and Thomas A. Carr filed the brief *amici curiae* for Clackamas County and Washington County.

Steven G. Liday filed the brief *amicus curiae* for the League of Oregon Cities. Also on the brief were William L. Rasmussen and Miller Nash LLP.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

OAR 660-012-0830(1)(c) and OAR 660-012-0920(7)(c) held invalid; otherwise, CFEC rules held valid.

**ORTEGA, P. J.**

This consolidated proceeding involves rule challenges under ORS 183.400 asserted by two sets of petitioners—13 Oregon cities and Marion County (city petitioners), and Oregon Home Builders Association, Oregon Business & Industry Association, Oregon Realtors, and Oregon Trucking Associations, Inc. (industry petitioners) (collectively, petitioners).[1] Petitioners challenge the validity of an entire package of 89 administrative rules, some of which are new rules and some of which are amendments to existing rules, adopted by the Land Conservation and Development Commission (LCDC). That package of 89 rules is known as the Climate-Friendly and Equitable Communities rules (CFEC rules). Petitioners raise various challenges, arguing both that LCDC failed to comply with applicable rulemaking procedures and that LCDC exceeded its statutory authority in enacting the CFEC rules. Petitioners argue that those deficiencies require that we invalidate the entire package of CFEC rules. We reject those omnibus challenges as explained below. Alternatively, city petitioners bring individual challenges to two of the CFEC rules—OAR 660-012-0830(1)(c) and OAR 660-012-0920(7)(c). We agree with city petitioners as to those two rules. LCDC did not provide sufficient notice of the subject matter of OAR 660-012-0830(1)(c) and LCDC exceeded its statutory authority in enacting OAR 660-012-0920(7)(c). As a result, we hold those two rules invalid, but otherwise hold that the remaining CFEC rules are valid.

The CFEC rules represent the culmination of a process that started in 2020 after then-Governor Brown issued Executive Order 20-04, directing state agencies to take action to reduce greenhouse gas emissions. After working with the Department of Land Conservation and Development (DLCD) to define the scope of rulemaking, LCDC initiated the rulemaking process in September 2020

---

[1] Clackamas County and Washington County filed an *amici* brief in support of city petitioners' challenge to LCDC's statutory authority to enact the rules. We do not address that brief in our opinion because it raises issues that we cannot consider in a rule challenge under ORS 183.400. The League of Oregon Cities filed an *amicus* brief also in support of city petitioners' challenge to LCDC's statutory authority. We discuss that briefing in our analysis of that issue.

with a rulemaking charge to DLCD to draft rules. Also, a Rulemaking Advisory Committee met several times to discuss draft rules and policy approaches. On February 24, 2022, LCDC filed its "Notice of Proposed Rulemaking" (the notice) with the Secretary of State. On May 19, 2022, LCDC adopted temporary rules. Finally, on July 21, 2022, LCDC adopted the permanent CFEC rules, which are at issue in this proceeding and which took the place of the temporary rules.

The CFEC rules amend three existing divisions in the LCDC rules—housing, OAR 660-008, transportation planning, OAR 660-012, and metropolitan greenhouse gas reduction targets, OAR 660-044. In broad terms, the CFEC rules require communities to update their local land use and transportation system plans to allow for greater residential density, reduce the amount of land that must be reserved for parking, achieve a reduction in residents' vehicle travel miles, and provide infrastructure for electric vehicles, among other things. In addition, cities, and some counties, within metropolitan areas in the state are required to designate "climate-friendly areas," and to adopt plans and regulations designed to meet the requirements for those areas, including identifying gaps in existing pedestrian and bicycle networks and proposing projects to fill those gaps. The CFEC rules also include provisions that are intended to improve equity for traditionally underserved communities relative to transportation and land use planning.

Before setting out petitioners' challenges, we first describe our scope of review under ORS 183.400. We may declare a rule invalid only if we determine that the rule "[v]iolates constitutional provisions," "[e]xceeds the statutory authority of the agency," or "[w]as adopted without compliance with applicable rulemaking procedures." ORS 183.400(4). Petitioners contend both that LCDC exceeded its statutory authority and that it did not comply with applicable rulemaking procedures. In addressing those challenges, we are limited to examining "[t]he rule under review," "[t]he statutory provisions authorizing the rule," and "[c]opies of all documents necessary to demonstrate compliance with applicable rulemaking procedures." ORS 183.400(3). We

begin by addressing the procedural challenges. *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984) (stating that procedural challenges should be addressed before challenges to the agency's scope of authority for the rule).

## I. PROCEDURAL CHALLENGES

### A. *Procedural Challenges under ORS 183.335*

We first address petitioners' challenges under ORS 183.335, which includes city petitioners' assignments of error 3 and 4 and industry petitioners' assignments of error 1 and 2. ORS 183.335 is part of the Oregon Administrative Procedures Act (APA) and sets out the notice and comment procedures for the adoption, amendment, or repeal of administrative rules and, more specifically to petitioners' challenges, ORS 183.335(2)(b) sets out in eight subparagraphs what the agency "shall include with the notice of intended action." Petitioners raise various challenges, arguing that LCDC's rulemaking notice was inadequate and requires that we invalidate the CFEC rules. We review whether LCDC substantially complied with the requirements of ORS 183.335. ORS 183.335(11)(a) ("[A] rule is not valid unless adopted in substantial compliance with the provisions of this section[.]").

### 1. *Industry petitioners' first assignment of error*

In their first assignment of error, industry petitioners argue that LCDC was required to issue a new notice under ORS 183.335 before repealing the temporary rules and adopting the permanent CFEC rules. They assert two distinct arguments in support of their position.

Industry petitioners first assert that the notice requirement in ORS 183.335 applies to the repeal or adoption of *any* rule—including a temporary one—and that LCDC's notice applied to the temporary rules only, so that LCDC failed to issue a notice for the permanent CFEC rules. We reject that argument because it does not comport with the record or attempt to grapple with all the applicable sections of ORS 183.335.

For their argument, industry petitioners solely point to ORS 183.335(1), which provides that, "[p]rior to the adoption, amendment or repeal of any rule, the agency shall give notice of its intended action[.]" However, LCDC adopted the temporary rules pursuant to ORS 183.335(5), and not pursuant to the notice that LCDC issued under ORS 183.335(1), which is the notice LCDC relied on for the permanent CFEC rules.[2] Under ORS 183.335(6)(a), a temporary rule "may be effective for a period of not longer than 180 days" and "does not preclude the subsequent adoption of an identical rule under subsections (1) to (4) of this section." Industry petitioners do not address the effect of ORS 183.335(5) or (6) on their argument and we will not make their argument for them. *See, e.g.*, *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700-01 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself."). Thus, we reject industry petitioners' first argument supporting its contention that LCDC could not adopt the permanent CFEC rules without issuing a new notice.

In the alternative, industry petitioners argue that LCDC was still required to issue a new notice for the permanent

---

[2] ORS 183.335(5)(a) provides:

"(5) Notwithstanding subsections (1) to (4) of this section, an agency may adopt, amend or suspend a rule without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, if the agency prepares:

"(a) A statement of its findings that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned and the specific reasons for its findings of prejudice;

"(b) A citation of the statutory or other legal authority relied upon and bearing upon the promulgation of the rule;

"(c) A statement of the need for the rule and a statement of how the rule is intended to meet the need;

"(d) A list of the principal documents, reports or studies, if any, prepared by or relied upon by the agency in considering the need for and in preparing the rule, and a statement of the location at which those documents are available for public inspection; and

"(e) For an agency specified in ORS 183.530, a housing cost impact statement as defined in ORS 183.534."

rules because of the substantive differences between the permanent CFEC rules and the proposed draft rules included in the notice. In making that argument, industry petitioners point to four rules (out of the 89 CFEC rules) as examples of rules they argue were substantively changed from the noticed version—OAR 660-012-0135, OAR 660-012-0310, OAR 660-012-0315, and OAR 660-012-0330—but also acknowledge that changes to other CFEC rules were minor. Nonetheless, industry petitioners assert that the CFEC rules as a whole are invalid because of the substantial departures.

Responding to industry petitioners' alternative argument, LCDC asserts that the notice was sufficient because the permanent CFEC rules as a whole covered the same subjects as the draft rules in the notice, as provided in *Bassett v. Fish and Wildlife Comm.*, 27 Or App 639, 556 P2d 1382 (1976). LCDC further argues that, because industry petitioners have not demonstrated that *Bassett* is "plainly wrong," we should adhere to it. LCDC further observes that the rules singled out as examples by industry petitioners, although differing in detail, still address the same subjects.

We are not persuaded that the CFEC rules are wholly invalid because LCDC did not issue a new notice. "Whether a notice of proposed rulemaking substantially complies with the requirements of ORS 183.335 must be measured against the purpose of the notice." *Oregon Funeral Directors v. Mortuary and Cemetery Bd.*, 132 Or App 318, 323, 888 P2d 104 (1995). The purpose of the notice is to provide "the subject matter and purpose of the intended action in sufficient detail to inform a person that the person's interests may be affected[.]" ORS 183.335(2)(a)(B); *see also Oregon Funeral Directors*, 132 Or App at 323 (quoting the same purpose from the then-current version of ORS 183.335(2)(a)); *Assn. of Oregon Loggers v. Dept. of Ins. and Finance*, 130 Or App 594, 596, 883 P2d 859 (1994) ("The purpose of the notice of rulemaking is to alert interested persons that the agency's proposed action may have some effect on them."). Also, as relevant to industry petitioners' argument, we have explained:

> "The purpose of the notice requirement for rulemaking is twofold. It serves to inform the interested public about intended agency action. It triggers the opportunity for an agency to receive the benefit of the thinking of the public on the matters being considered. The notice requirement contemplates that an agency may often desire to alter a proposed rule after receiving public comment. To require, as petitioner would apparently have us do, that any modification of a proposed rule after hearing necessitates still another notice and another hearing would produce an unwieldy procedure and also might well result in either hearing after hearing or an agency reluctant to change a single word of its original proposals no matter how persuasive the arguments for change offered at the hearing."

*Bassett*, 27 Or App at 642. As such, in *Bassett*, we concluded that, although the adopted rules differed from the proposed rules, the notice was still adequate because the adopted rules did not cover a subject not specified in the notice. *Id.*; *cf. Watson v. OSP*, 90 Or App 85, 88, 750 P2d 1188 (1988) (agency did not comply with ORS 183.335(2) as provided in *Bassett* because the notice "was not broad enough to encompass the subject matter of the disputed rules"). We adhere to *Bassett* as industry petitioners have not demonstrated that the decision is "plainly wrong," *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017), and conclude that LCDC substantially complied with ORS 183.335.

LCDC's notice provided in the opening statement of need:

> "On March 10, 2020, Governor Kate Brown issued Executive Order 20-04, directing agencies to reduce climate pollution. The Land Conservation and Development Commission is working on updating Oregon's Transportation Planning Rules and related administrative rules in response to this order. The Department of Land Conservation and Development (DLCD) initiated the Climate-Friendly and Equitable Communities (CFEC) rulemaking in September 2020.

> "The rulemaking will significantly impact Oregon's rules regarding transportation and housing planning, particularly in the eight areas with populations over 50,000 people (Albany, Bend, Corvallis, Eugene/Springfield, Grants Pass, Medford/Ashland, Portland metro, Salem/Keizer). Some of

the rules will also apply to and/or impact communities outside of these areas."

In other sections of the notice, LCDC detailed that the rule changes were extensive, would affect most Oregon residents, would require new equity analyses, reflected an increased focus on climate pollution reduction, would require metropolitan areas to establish "climate-friendly areas," and identified that the transportation rules would be "significantly altered and expanded" and described the major new requirements for transportation system plans. The notice further provided a summary of the subject matter of each proposed rule and rule amendment, which was placed before the text of the proposed rule. Industry petitioners have not identified how the permanent CFEC rules on the whole fall outside of the subject matter covered in the notice. As to the four out of 89 CFEC rules that industry petitioners single out as examples, they still do not identify how those rules are not covered by the subject matter of the notice.

Accordingly, we conclude that LCDC substantially complied with ORS 183.335 when it relied on its notice for the permanent CFEC rules, although those rules differed from the draft rules in the notice.

### 2. *City petitioners' fourth assignment of error*

In their fourth assignment of error, city petitioners also argue that a substantial departure in the CFEC rules from the draft rules required LCDC to issue a new notice. However, instead of challenging the CFEC rules as a whole on that basis, city petitioners focus on one rule—OAR 660-012-0830(1)(c)—which provides:

"(1)   Cities and counties shall review and may authorize certain proposed facilities to be included as a planned project or unconstrained project in any part of the local comprehensive plan, including the transportation system plan.

"* * * * *

"(c)   To retain a proposed facility that is included in an existing acknowledged plan adopted as provided in OAR 660-012-0015, a city or county shall review that facility under this rule at the time of a major update to its transportation system plan."

Subparagraph (1)(c) was not part of the draft rules in the notice and was first included in the CFEC rules in the final packet presented to LCDC for adoption. That part of the rule expanded the analysis required by the rule to apply not just to newly proposed projects but also to existing planned projects. City petitioners argue that the expansion of the analysis by that addition to the rule was a change in subject matter that necessitated that LCDC provide a new notice for the rule and allow a new public comment period.

LCDC responds that including OAR 660-012-0830(1)(c) did not change the rule such that it covers a subject not specified in the notice, because it still covers the same subject of "roadway projects."

We first reject LCDC's characterization of the subject matter of the rule that was in the notice, because it was not left so broad or vague. The specific subject matter identified for OAR 660-012-0830 in the notice was that "[t]his rule provides for how local governments must review and authorize certain street and highway projects before adding them to a local transportation system plan." That subject matter summary does not suggest that the rule would apply to existing planned projects; it specified that the rule applies to projects "*before adding* them to a local transportation system plan." (Emphasis added.) That identified subject matter would not have alerted the public that the rule could require that the enhanced review would apply to projects that had already been included in an acknowledged plan. In addition, in the fiscal impact statement, the notice provided:

> "OAR 660-012-0830 outlines a significant change in the review of transportation facilities that could increase climate pollution. The process is intended to encourage local governments to identify, review, assess, and potentially implement alternatives to these types of facilities."

Nothing in that specific mention of the rule, or elsewhere in the sections of the notice that applied to all the CFEC rules, suggested that LCDC would be considering extending the new analysis required by OAR 660-012-0830 to projects already included in acknowledged plans. Unlike in *Bassett*, the adopted rule does cover a subject matter not specified in the notice and LCDC did not substantially comply with

the notice requirements of ORS 183.335 with respect to that rule.

As a result, we hold that OAR 660-012-0830(1)(c) is invalid.

### 3. *Industry petitioners' second assignment of error and city petitioners' third assignment of error*

Both industry petitioners and city petitioners also challenge the adequacy of particular sections of LCDC's notice, which are required by ORS 183.335. We address each of those sections in turn.

#### a. Citations of legal authority

Under ORS 183.335(2)(b)(A) and (B), the notice must include "[a] citation of the statutory or other legal authority relied upon and bearing upon the promulgation of the rule" and "[a] citation of the statute or other law the rule is intended to implement." Here, in the notice under each proposed rule or rule amendment, LCDC listed ORS 197.040 as the statutory authority. Some of the rules that were amended also listed various other statutes within ORS chapter 197, and other chapters, as the statutes being implemented. However, the proposed rules that were new rules cited only to ORS 197.040 as the statute being implemented.

Petitioners argue that those citations in the notice are inadequate and render the CFEC rules invalid. City petitioners assert that LCDC made no effort to comply with the citation requirements and that ORS 197.040 is an insufficient statutory basis because LCDC made no effort to identity its substantive source of authority for the CFEC rules. Industry petitioners also argue that the citations are inadequate, arguing that LCDC's citations do not "serve the purpose of informing the public of what statutory policy the agency intends to carry out or 'implement' though its proposed rule." Industry petitioners argue that, if citing only to general rulemaking authority were sufficient, requiring citations in the notice would be rendered meaningless. Rather, they assert, because the citation requirement uses the word "authority" it must mean that the agency must

identify the substantive legislative policy that supports the agency's authority to enact the rule.

LCDC responds that a citation to ORS 197.040 was sufficient because that statute empowers LCDC to "adopt rules that it considers necessary to carry out ORS chapters 195, 196, 197 and 197A." ORS 197.040(1)(b). That citation, LCDC argues, provided notice that it was relying on and implementing the broad authority that the legislature delegated to it to carry out those ORS chapters. LCDC asserts that nothing in ORS 183.335(2)(b)(A) and (B) require an agency to identify the exact legislative policy that supports the agency's statutory authority to enact the rule; rather, it is a requirement that an agency identify the authority that the agency is relying on.

As previously stated, "[w]hether a notice of proposed rulemaking substantially complies with the requirements of ORS 183.335 must be measured against the purpose of the notice." *Oregon Funeral Directors*, 132 Or App at 323. We have not previously addressed the purpose of the citation requirement and, thus, we must discern the legislature's intent in including that requirement. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (explaining that the "paramount goal" of statutory interpretation is "discerning the legislature's intent"). In doing so here, we begin and end with the text and context of the provision. *Id.* at 171, 173 (holding that text and context "must be given primary weight in the analysis" and "[w]hen the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different").

From the text of ORS 183.335(2)(b)(A) and (B), we discern that the purpose of providing citations is to inform the interested public of the authority that the *agency* is relying on, that the *agency* believes bears upon the rule, and that the *agency* intends to implement. *See* ORS 183.335(2)(b) (A) (requiring the agency to include in the notice "[a] citation of the statutory or other legal authority *relied upon* and *bearing upon* the promulgation of the rule" (emphases added)); ORS 183.335(2)(b)(B) (requiring the agency to include in

the notice "[a] citation of the statute or other law the rule *is intended to implement*" (emphasis added)).

The context also supports our reading. The overall legislative purpose for the information required by ORS 183.335(2)(b) is to provide sufficient detail so that persons can discern if their interest is affected by the proposed rulemaking and have sufficient information needed to respond to the agency. *See Freemont Lumber Co. v. Energy Facility Siting Council*, 325 Or 256, 261-62, 936 P2d 968 (1997) (explaining that the 1977 amendments were "adopted in response to concerns that, because the then-abbreviated APA notice provisions provided insufficient information about the *agency's reasons* for proposing the rule, interested persons often were unable to submit data and arguments that were responsive to the agency's concerns in proposing the rule or rule change" (emphasis added)).[3] As the Supreme Court explained with respect to the statement of need in ORS 183.335(2)(b)(C), that legislative purpose is not disserved "simply because that statement is premised on an erroneous perception of law or fact. Indeed, a statement's usefulness may lie precisely in the fact that it brings the agency's mistaken legal or factual premises to light[.]" *Id.* at 262. While we agree with petitioners that ORS 183.335(2)(b)(B)'s reference to the law the agency intends to implement is a reference to the *substantive* law an agency intends to implement, and not just a reference to its general rulemaking authority,

---

[3] The citation requirement found in ORS 183.335(2)(b)(A) was originally enacted in 1977 and was required to be a part of the agency's statement of need. Or Laws 1977, ch 161, § 1 (requiring the statement to include "[t]he legal authority of any jurisdiction relied upon and bearing upon the promulgation of the rule"). That requirement was moved to its own paragraph in 1979, with the wording amended to that which appears in the statute today. Or Laws 1979, ch 593, § 11. *See also* David B. Frohnmayer, *The Oregon Administrative Procedure Act: An Essay on State Administrative Rulemaking Procedure Reform*, 58 Or L Rev 411, 463-67 (1980) (describing history).

The additional citation requirement found in ORS 183.335(2)(b)(B) was added by the legislature in 1993 and was enacted without amendment. Or Laws 1993, ch 729, § 3; House Bill (HB) 2262 (1993), introduced. As with the citation provision in ORS 183.335(2)(b)(A), the legislative history supports our conclusion that the purpose of requiring an agency to provide a citation of law it intended to implement was to provide information on what substantive law the agency *thinks* it is implementing. *See* Testimony, House Committee on Rules and Reorganization, HB 2262, Jan 27, 1993, Ex A (comments of William Funk, member of Secretary of State Administrative Rules Advisory Committee); Testimony, Senate Judiciary Committee, HB 2262 July 23, 1993, Ex F (comments of William Funk).

its purpose is nonetheless to give the public information on the agency's thinking as a procedural matter and does not require the agency to be correct about that authority in the notice.

Here, LCDC cited to ORS 197.040, which confers broad rulemaking and policy-setting authority on LCDC. ORS 197.040(1)(b) (authorizing LCDC to "adopt rules that it considers necessary to carry out ORS chapters 195, 196, 197 and 197A"); ORS 197.040(1)(c)(A) (authorizing LCDC to "[a]dopt by rule *** or by goal *** any statewide land use policies that it considers necessary to carry out ORS chapters 195, 196, 197 and 197A"). As a matter of substance directly bearing on the CFEC rules, ORS 197.040(2)(c) also requires LCDC to "[p]repare statewide planning guidelines."

In addition, LCDC provided that it was intending to carry out the policy stated in Executive Order 20-04, a copy of which was made available with the notice. The notice further explained, particularly in the fiscal impact statement, what specific policies the CFEC rules were intended to implement in furtherance of the broad goals stated in that order. The notice also provided in the text of proposed OAR 660-012-000 that the rules in that division implemented Land Use Planning Goal 12, among other goals, and in the text of proposed OAR 660-044-000 that the rules in that division implemented Land Use Planning Goal 12 (Transportation) and the stated goal in ORS 468A.205 to reduce greenhouse gas emissions. Nothing in ORS 183.335 requires all citations to be appended to each individual draft rule; rather, ORS 183.335 requires that the citations appear in the notice.

Based on those citations, we conclude that LCDC provided notice of the citations to statutes or other law that it was relying on, that it believed bore on the CFEC rules, and that it was intending to implement. From a view of assessing the adequacy of the procedure used by LCDC, we conclude that those citations substantially complied with the requirements in ORS 183.335(2)(b)(A) and (B).

b.   Statement of need

Under ORS 183.335(2)(b)(C), the notice must include "[a] statement of the need for the rule and a statement of

how the rule is intended to meet the need." The Supreme Court has explained that "[t]he 'need' contemplated by ORS 183.335(2)(b)(C) is a need that the rule-proposing agency *perceives*." *Freemont Lumber Co.*, 325 Or at 262 (emphasis in original).

Here, LCDC provided the following "statement of need" in the notice:

> "On March 10, 2020, Governor Kate Brown issued Executive Order 20-04, directing agencies to reduce climate pollution. The Land Conservation and Development Commission is working on updating Oregon's Transportation Planning Rules and related administrative rules in response to this order. The Department of Land Conservation and Development (DLCD) initiated the Climate-Friendly and Equitable Communities (CFEC) rulemaking in September 2020.

> "The rulemaking will significantly impact Oregon's rules regarding transportation and housing planning, particularly in the eight areas with populations over 50,000 people (Albany, Bend, Corvallis, Eugene/Springfield, Grants Pass, Medford/Ashland, Portland metro, Salem/Keizer). Some of the rules will also apply to and/or impact communities outside of these areas."

Petitioners argue that LCDC's statement of need is inadequate because it does not contain the required detail of why any of the extensive and technical rules were needed and omits altogether the second requirement—how the rule is intended to meet the need.

We decline to read the notice so narrowly. Our task is to determine if the notice, as a whole, substantially complied with ORS 183.335(2)(b)(C). *See Fremont Lumber Co.*, 325 Or at 262 (considering the entirety of the notice—including the provision of the draft rule—in determining whether the agency's position was sufficiently clear to serve the purposes of ORS 183.335(2)(b)(C)). Although the part of the notice titled "statement of need" only identifies why the rulemaking was undertaken, the rest of the notice more than adequately explains the perceived agency need for the proposed rules and how the proposed rules are intended to meet that need. Petitioners do not address any other part

of the notice or attempt to explain why we cannot consider the rest of the notice in determining whether LCDC substantially complied with the procedural requirements of ORS 183.335(2)(b)(C). Accordingly, we reject petitioners' argument that LCDC's statement of need is procedurally inadequate.

### c.  Fiscal impact statement

Under ORS 183.335(2)(b)(E), the notice must include a fiscal impact statement, which requires:

> "A statement of fiscal impact identifying state agencies, units of local government and the public that may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of the proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected. For an agency specified in ORS 183.530 [which includes LCDC], the statement of fiscal impact shall also include a housing cost impact statement as described in ORS 183.534[.]"[4]

---

[4] "Economic effect" is defined by statute to mean "the economic impact on affected businesses by and the cost of compliance, if any, with a rule for businesses, including but not limited to the costs of equipment, supplies, labor and administration." ORS 183.310(3). "Small business" is defined to mean "a corporation, partnership, sole proprietorship or other legal entity formed for the purpose of making a profit, which is independently owned and operated from all other businesses and which has 50 or fewer employees." ORS 183.310(10)(a).

In addition, ORS 183.336 provides:

"(1) The statement of cost of compliance effect on small businesses required by ORS 183.335(2)(b)(E) must include:

"(a) An estimate of the number of small businesses subject to the proposed rule and identification of the types of businesses and industries with small businesses subject to the proposed rule;

"(b) A brief description of the projected reporting, recordkeeping and other administrative activities required for compliance with the proposed rule, including costs of professional services;

"(c) An identification of equipment, supplies, labor and increased administration required for compliance with the proposed rule; and

"(d) A description of the manner in which the agency proposing the rule involved small businesses in the development of the rule.

"(2) An agency shall utilize available information in complying with the requirements of this section."

We first address city petitioners' arguments, which are solely focused on the fiscal impact statement relative to local governments. They argue that LCDC's statement "is nothing more than a performative gesture that contains no meaningful information" and operates to "lull the reader into thinking that the [CFEC] Rules will not have major financial impacts." City petitioners assert that the statement does not provide an indication of the scale of costs to local governments to comply with the rule, nor does it explain why LCDC could not calculate likely costs.

The Supreme Court has stated that the purpose of the fiscal impact statement is to "protect[] against arbitrary and inadequately informed governmental conduct." *Dika v. Dept. of Ins. and Finance*, 312 Or 106, 109, 817 P2d 287 (1991). We also have explained the analysis we will undertake in reviewing a fiscal impact statement:

> "The analysis of ORS 183.335(2)(b)(E) in *Dika* and subsequent cases reduces to two requirements: First, the statement must identify which entities are to be affected by enactment of the rules. Second, it must give the affected entities enough information to evaluate their position so that they might participate meaningfully in the rule adoption process or, if that information is not available, it must so state."

*Independent Contractors Research Institute v. DAS*, 207 Or App 78, 87, 139 P3d 995, *rev den*, 341 Or 579 (2006); *see also Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 637-38, 240 P3d 1122 (2010) ("[T]he agency must either provide a quantifiable estimate of that impact or articulate reasons why no such estimate is possible, 'such as those that might be related to the inadequacy of "available information[.]"'" (quoting *Dika*, 312 Or at 110)). With that understanding, we reject city petitioners' challenge, which is solely directed at LCDC's failure to put any type of numerical value on the cost of local government compliance with the proposed rules, because LCDC's notice met the requirements as explained in the case law.

In the fiscal impact statement,[5] LCDC described the source of likely increases in costs for local governments with

---

[5] LCDC's notice included a lengthy fiscal impact statement. Consequently, we only discuss that statement in a summary fashion in this opinion. The statement

respect to complying with each group of rules—housing, transportation, and greenhouse gas reduction targets. Then, with respect to each, LCDC explained that it could not quantify the costs because they would greatly vary between individual jurisdictions based on a number of factors, including "previous planning efforts," "historic development patterns," "demographic patterns," "characteristics of projected housing demand," and "transportation system characteristics and needs." LCDC also explained that costs would vary based on how a local government chose to comply with the rules, whether it conducted the analysis internally or hired external consultants, how much public outreach is conducted, and local code amendment processes.

Although no scope of cost was estimated by LCDC, its fiscal impact statement did identify what would cause costs to the local governments and many of the factors that would influence the scope of those costs. Rather than "lull" a reader into thinking there were no major costs, as asserted by city petitioners, the statement did the opposite and alerted the reader that there could be significant costs of compliance for local governments. In addition, the factors identified by LCDC as influencing the scope of costs are factors within the knowledge of the individual jurisdictions; that is, they were not being hidden by LCDC in the notice. "If the statement, when considered with the other information, is sufficient to notify persons who might be economically affected to evaluate their positions, then the purpose of providing protection against arbitrary and inadequately publicized governmental conduct has been met." *Oregon Funeral Directors*, 132 Or App at 323. Here, we conclude that the purpose of the fiscal impact statement relative to local governments has been met.

Industry petitioners make similar arguments, but instead focus on the fiscal impact statement relative to Oregon businesses. They argue that the statement did not give any meaningful information about the effect of the rules on businesses. In particular, industry petitioners point out that no cost impact was offered for businesses dedicated

included separate discussion of potential costs of compliance and other fiscal impacts relative to each of the three divisions—division 8, housing, division 12, transportation, and division 44, greenhouse gas reduction targets.

to building, remodeling, and selling single-family detached homes, a type of housing that will be effectively precluded in climate-friendly areas, or an estimate of the fiscal effect on freight and commercial trucking and the businesses that rely on them. Industry petitioners argue that LCDC had to do more than discuss cost of compliance; it was required to address any significant effect of the rules on businesses. Industry petitioners also point out that LCDC failed to include information required by ORS 183.336(1)(d).

We address industry petitioners' last argument first and agree that LCDC did not include anywhere in the notice "[a] description of the manner in which the agency proposing the rule involved small businesses in the development of the rule," ORS 183.336(1)(d). That description is required in the "statement of cost of compliance effect on small businesses required by ORS 183.335(2)(b)(E)." Here, however, LCDC did not identify any cost of *compliance effect* on small businesses, and industry petitioners have not identified any, as the proposed rules are directed at government entities and not small businesses. As a result, we do not perceive how LCDC's failure to describe the involvement of small business, if any, could render the notice legally inadequate, and industry petitioners have not offered such an explanation. Thus, we reject that argument as a basis on which to invalidate the CFEC rules.

Turning to industry petitioners' main argument, LCDC's fiscal impact statement made several observations relative to businesses. With respect to housing, the statement did not identify any economic impact on businesses, but the housing impact statement did state that "[t]he proposed rule changes will impact portions of the housing market, and as a result may have an impact on the cost of developing housing and home pricing (rents/purchase prices)." That section recognized that single family homes will be precluded in climate-friendly areas. The fiscal statement provided, with respect to transportation and greenhouse gas reduction target rules, that businesses "may be impacted by changes over time in transportation infrastructure," which could affect business ability to meet business needs, and that costs will increase in new construction to meet new requirements for

electric vehicle infrastructure and surface parking lots. In particular, LCDC recognized that freight traffic would be affected by increased congestion in denser areas, although it noted that, if vehicle mile reduction goals were met, there would be reduced congestion. The statement also explained that the impact on freight businesses depended upon the success of the rule changes and "is likely to vary substantively at the jurisdictional level" and further that, "[t]he impact on individual businesses is expected to be highly variable depending upon the nature of their operations and transportation requirements."

We again conclude that LCDC substantially complied with ORS 183.335 in the fiscal impact statement relative to businesses, because LCDC satisfied the purpose "of providing protection against arbitrary and inadequately publicized governmental conduct." *Oregon Funeral Directors*, 132 Or App at 323. The primary difficulty we have with industry petitioners' arguments is that they are in effect asserting that LCDC had to identify and quantify highly speculative economic impacts, including ones that may not be significant. However, ORS 183.335(2)(b)(E) tasked LCDC to "utilize available information to project any significant economic effect of that action on businesses[.]" As to that charge, LCDC identified anticipated significant economic effects on industry groups related to housing, transportation, and construction and identified specific rule changes that might economically impact those groups. LCDC also explained why it could not be more precise in its analysis given the number of factors that would influence the implementation of the rules in each jurisdiction. As such, LCDC alerted potentially affected businesses to the potential economic effects of the proposed rules on them, and along with the rest of the notice (which included a full set of draft rules), provided sufficient information for such businesses to assess their own position and meaningfully participate in the rule adoption process.

In sum, we reject city petitioners' third assignment of error and industry petitioners' second assignment of error, because LCDC substantially complied with the requirements in ORS 183.335 for its notice of proposed rulemaking.

B.   *Procedural Challenges under ORS chapter 197*

In their first and second assignments of error, city petitioners bring two additional procedural challenges to LCDC's rulemaking based on ORS 197.040(1)(b) and ORS 197.047. We address each of those statutes in turn.

1.   ORS 197.040(1)(b)

The legislature gave LCDC general rulemaking authority under ORS 197.040(1). The portion of that statute at issue in city petitioners' first assignment of error is ORS 197.040(1)(b), which provides that LCDC:

"(b)   In accordance with the provisions of ORS chapter 183, adopt rules that it considers necessary to carry out ORS chapters 195, 196, 197 and 197A. Except as provided in subsection (3) of this section, in designing its administrative requirements, the commission shall:

"(A)   Allow for the diverse administrative and planning capabilities of local governments;

"(B)   Consider the variation in conditions and needs in different regions of the state and encourage regional approaches to resolving land use problems;

"(C)   Assess what economic and property interests will be, or are likely to be, affected by the proposed rule;

"(D)   Assess the likely degree of economic impact on identified property and economic interests; and

"(E)   Assess whether alternative actions are available that would achieve the underlying lawful governmental objective and would have a lesser economic impact."

Additionally, ORS 197.040(3) provides, "The requirements of subsection (1)(b) of this section shall not be interpreted as requiring an assessment for each lot or parcel that could be affected by the proposed rule."

City petitioners assert that ORS 197.040(1)(b)(A) through (E) set out rulemaking procedures that LCDC is required to follow and that LCDC did not do so with respect to the CFEC rules. LCDC denies that ORS 197.040(1)(b) is an applicable rulemaking procedure. We, however, agree with

city petitioners that ORS 197.040(1)(b) sets out rulemaking procedures that apply to LCDC.

Under ORS 183.400(4)(c), we will declare a rule invalid if it "[w]as adopted without compliance with applicable rulemaking procedures." The reference to "applicable rulemaking procedures" includes those procedures contained in ORS chapter 183, as well as any other rulemaking procedure that the legislature has imposed on the agency in other statutes. *Western States Petroleum Assn. v. EQC*, 296 Or App 298, 307-08, 439 P3d 459 (2019). In *Western States Petroleum Assn.*, we concluded that "rulemaking" is a legal term of art that means "'the process used by an administrative agency to formulate, amend, or repeal a rule or regulation.'" *Id.* at 309 (quoting *Black's Law Dictionary* 1530 (10th ed 2014)). We further concluded that "procedure" means "'a particular way of doing or of going about the accomplishment of something.'" *Id*. (quoting *Webster's Third New Int'l Dictionary* 1807 (unabridged ed 2002)). Applying those definitions, we ultimately concluded that ORS 468A.266(5), which required The Environmental Quality Commission (EQC) to evaluate certain factors "in adopting rules under this section," is a rulemaking procedure.

Applying that reasoning here, we also must conclude that ORS 197.040(1)(b) is a rulemaking procedure, because it requires LCDC to assess and consider certain factors "in designing its administrative requirements." We find unpersuasive the distinctions that LCDC tries to draw from the legislature's use of the word "designing" as opposed to the word "adopting." Here, the operative wording appears immediately after the sentence directing LCDC to adopt rules in accordance with ORS chapter 183; it is clear from the text and context that the legislature was referring to the adoption of such rules when it directed LCDC to assess and consider particular factors in "designing its administrative requirements." *See Gaines*, 346 Or at 171 (holding that text and context "must be given primary weight in the analysis"). Accordingly, we turn to the substance of city petitioners' challenge.

City petitioners assert that LCDC failed to comply with ORS 197.040(1)(b) because it did not prepare "formal"

written assessments for the factors in subparagraphs (C) through (E) that LCDC was required to "assess."[6] They assert that such formal assessments were necessary because ORS 197.070 states that LCDC "shall keep on file and available for public inspection the assessments prepared pursuant to ORS 197.040 and 197.230." Additionally, city petitioners argue that LCDC was required to make formal findings with regard to the factors in subparagraphs (A) and (B). Because there are not such assessments or findings reflected in the record, city petitioners argue that the CFEC rules are invalid. In so arguing, they assert that informal discussions cannot meet the requirements in ORS 197.040(1)(b) and assert that the "assessment of administrative rule requirements" prepared by DLCD is insufficient, is only an attempt to "paper over" LCDC's failure, and cannot be relied on by LCDC because the statutory requirements apply to LCDC and not DLCD. City petitioners also assert that the fiscal impact statement provided in the notice cannot be used to satisfy ORS 197.040(1)(b). Finally, city petitioners also find fault with LCDC's formal adoption of the rules because it did not make specific findings related to ORS 197.040(1)(b).

LCDC responds that ORS 197.040(1)(b) does not require LCDC to make specific findings before adoption of rules, and asserts that it did engage in the required considerations and assessments.

We first note that, under our scope of review, we may

> "consider only whether the documents indicate that [LCDC] engaged in any evaluation of the statutorily mandated factors in adopting the [CFEC rules]. We do not examine the agency's thinking process, consider how it weighed any criteria, or attempt a substantive consideration of whether the agency made an appropriate policy choice given a particular statutory mandate."

*Western States Petroleum Assn.*, 296 Or App at 310. In addition, in determining what ORS 197.040(1)(b) requires LCDC

---

[6] We note that it is not clear that LCDC enacted all of the CFEC rules pursuant to its authority under ORS 197.040(1)(b), as opposed to its authority under ORS 197.040(1)(c)(A) to set statewide land use policy, which does not contain the same requirements. However, LCDC does not assert that as a basis on which to reject city petitioners' first assignment of error, so we do not address it further.

to do, we apply our usual statutory interpretation methodology to determine the legislature's intent. *Gaines*, 346 Or at 171.

We first reject city petitioners' assertion that LCDC had to make formal findings with regard to any of the factors in ORS 197.040(1)(b). Nothing in the text or context of that statute suggests that LCDC had to make any such findings. As LCDC points out, when the legislature intends for LCDC to make findings it knows how to say so directly. *Compare* ORS 197.230(1)(d) (requiring LCDC to "[m]ake a finding of statewide need for the adoption of any new goal or the amendment of any existing goal") *with* ORS 197.230(1)(a) (requiring LCDC to "assess" three factors in "preparing, adopting and amending goals and guidelines") *and* ORS 197.230(1)(b), (c) (requiring LCDC to "consider" and "give consideration to" listed factors in "preparing, adopting and amending goals and guidelines").

We also reject city petitioners' assertion that ORS 197.040(1)(b)(C) through (E) require some sort of formal, written assessment. Again, nothing in the text or context includes such a requirement or provides any particular form that the assessment must take. ORS 197.070 merely requires that such assessments be made publicly available; it also does not place requirements on what form those assessments must take.

Turning to whether LCDC met the procedural requirements of ORS 197.040(1)(b), we conclude that the documents in the rulemaking record demonstrate that LCDC complied with those procedures. DLCD prepared an "assessment of administrative rule requirements" for LCDC to consider, which was included in the packet discussing and recommending adoption of the CFEC rules. That document addressed each factor in ORS 197.040(1)(b)(A) to (E) and described how the rulemaking process had met those requirements. That document demonstrates that LCDC addressed each of the factors "in designing" the CFEC rules. We conclude that the fiscal impact statement in the notice, in addition to meeting the requirements in ORS 183.335, satisfies the requirements that LCDC "[a]ssess what economic and property interests will be, or are likely to be,

affected by the proposed rule," ORS 197.040(1)(b)(C), and "[a]ssess the likely degree of economic impact on identified property and economic interests," ORS 197.040(1)(b)(D). We find unpersuasive city petitioners' assertions that DLCD's assessment and the fiscal impact statement are insufficient, because those arguments are primarily concerned with the substance of LCDC's evaluation and not LCDC's procedural compliance. As noted above, in determining whether the documents demonstrate that LCDC complied with procedural requirements, "[w]e do not examine the agency's thinking process, consider how it weighed any criteria, or attempt a substantive consideration of whether the agency made an appropriate policy choice given a particular statutory mandate." *Western States Petroleum Assn.*, 296 Or App at 310.

We also reject city petitioners' argument that DLCD's assessment is inadequate because it was prepared by DLCD. It was prepared by DLCD as part of the packet of documents for LCDC to consider at the hearing to adopt the CFEC Rules. That packet described the rulemaking process and how it complied with all rulemaking procedures, including those in ORS 197.040. In adopting the CFEC rules, LCDC was necessarily relying on those documents. *See Western States Petroleum Assn.*, 296 Or App at 312 ("[I]t is irrelevant that DEQ initially did the evaluation and then presented that evaluation to EQC for its consideration. EQC unquestionably may rely on evaluations and material initially compiled by DEQ."). Because ORS 197.040(1)(b) did not require formal findings by LCDC, that is sufficient.

We are not persuaded by city petitioners' arguments and conclude that LCDC complied with the statutory requirements in ORS 197.040(1)(b)(A) though (E) "in designing" the CFEC rules.

### 2. ORS 197.047

In their second assignment of error, city petitioners argue that LCDC failed to comply with the notice requirements in ORS 197.047. That statute provides, in part:

"(2)  At least 90 days prior to the final public hearing on a proposed new or amended administrative rule of the Land Conservation and Development Commission

described in subsection (10) of this section, the Department of Land Conservation and Development shall cause the notice set forth in subsection (3) of this section to be mailed to every affected local government that exercises land use planning authority under ORS 197.175.

"* * * * *

"(10)    The provisions of this section apply to all statutes and administrative rules of the Land Conservation and Development Commission that limit or prohibit otherwise permissible land uses or cause a local government to rezone property. For purposes of this section, property is rezoned when the statute or administrative rule causes a local government to:

"(a)    Change the base zoning classification of the property; or

"(b)    Adopt or amend an ordinance in a manner that limits or prohibits land uses previously allowed in the affected zone."

City petitioners argue that this statute applies because the CFEC rules "forc[e] local governments to enact (through zoning changes) numerous land use limitations." In particular, city petitioners point to the rules relating to climate-friendly areas, which they argue require cities in metropolitan areas to study and then zone those areas consistent with many requirements, including requirements that "make it essentially impossible to build detached single-family homes."

Our fundamental problem with city petitioners' argument is that they seek to invalidate all 89 of the CFEC rules without identifying which of those rules they assert implicate the notice required by ORS 197.047. Although in their discussion of the climate-friendly area rules city petitioners cite to specific rules, at no point do city petitioners request that we only invalidate those specific rules. Even if those cited rules had the effect that city petitioners attribute to them, it cannot be the case that every single one of the CFEC rules requires rezoning or prohibits previously allowed uses. City petitioners do not explain why a failure to provide a required notice for a small subset of the CFEC rules would operate to invalidate all of the CFEC rules.

With respect to OAR 660-012-0310, OAR 660-012-0315, and OAR 660-012-0320, which city petitioners identify in their argument, we do not agree that those rules *on their face* trigger the notice requirements of ORS 197.047, as set out in ORS 197.047(10). The face of those rules as written does not have those effects or require local governments to take those actions. In a rule challenge, we are limited to the face of the rules and cannot consider the effect such rules might have in a particular application. ORS 183.400(3).

As a result, we reject city petitioners' second assignment of error.

## II.   STATUTORY AUTHORITY CHALLENGES

Both city petitioners and industry petitioners challenge LCDC's statutory authority to enact the CFEC rules in their entirety. In addition, city petitioners challenge one rule in particular—OAR 660-012-0920(7)(c)—as beyond the statutory authority of LCDC. In addressing a challenge to statutory authority, "[t]he record on review * * * consists of two things only: the wording of the rule itself (read in context) and the statutory provisions authorizing the rule." *Wolf v. Oregon Lottery Commission*, 344 Or 345, 355, 182 P3d 180 (2008) (citing ORS 183.400(3)). An agency "exceeds the statutory authority of the agency" if the rule "depart[s] from a legal standard expressed or implied in the particular law being administered, or contravene[s] some other applicable statute." *Planned Parenthood Assn.*, 297 Or at 565. We address each of petitioners' assignments of error challenging LCDC's statutory authority in turn.

### A.   *Industry Petitioners' Third Assignment of Error*

In asserting that LCDC does not have statutory authority for enacting the CFEC rules, industry petitioners specifically argue that there is no expressed statutory policy in any of the statutes cited by LCDC in the permanent rules that authorize the CFEC rules. In so arguing, industry petitioners do not discuss the text of any of the CFEC rules and only point to a few rules as examples. Because, unlike city petitioners' argument as addressed below, industry petitioners explicitly argue that all of the CFEC rules

exceed LCDC's authority, we proceed to address those broad arguments, as far as they go.

We first note that industry petitioners do not argue that the CFEC rules exceed LCDC's general rulemaking authority set out in ORS 197.040. The legislature has conferred on LCDC broad authority to "adopt rules that it considers necessary to carry out ORS chapters 195, 196, 197 and 197A," ORS 197.040(1)(b), and to "[a]dopt by rule in accordance with ORS chapter 183 * * * any statewide land use policies that it considers necessary to carry out ORS chapters 195, 196, 197 and 197A," ORS 197.040(1)(c)(A). As articulated by the Supreme Court:

> "The legislature created LCDC to ensure consistent and comprehensive land use planning and to promote coordinated statewide land conservation and development. ORS 197.005. To accomplish those purposes, the legislature invested LCDC with broad policy-making and regulatory authority. It directed LCDC to set goals and standards for land use and declined to set the land use planning goals itself."

*Lane County v. LCDC*, 325 Or 569, 581, 942 P2d 278 (1997). Under that broad authority, LCDC can adopt rules within its purview as long as the rules are consistent with the general legislative policy; that is, the rule must be within the range of discretion allowed by the legislative policy. *Planned Parenthood Assn.*, 297 Or at 573 ("To the extent that the rule departs from the statutory policy directive, it 'exceeds the statutory authority of the agency' within the meaning of those words in ORS 183.400(4)(b).").

It is not obvious that the CFEC rules contravene some expressed legislative policy or law, and industry petitioners do not point to any such policy or law. Rather, industry petitioners assert that LCDC must point to a specific expressed legislative policy that authorized its particular rulemaking effort here. However, that is not the correct frame for our task given the broad authority the legislature has conferred on LCDC to implement the broad policy goals in ORS chapter 197. The question is whether the CFEC rules are within LCDC's discretion that the legislature

has allowed by the more general policy in the statutes.[7] *See, e.g.*, *1000 Friends v. LCDC*, 292 Or 735, 744, 642 P2d 1158 (1982) (reviewing whether it was within LCDC's delegated authority to adopt a particular land use planning goal by "inquiring into the policies which underlie the legislation"); *Springfield Education Assn. v. School Dist.*, 290 Or 217, 229, 621 P2d 547 (1980) ("The discretionary function of the agency is to make the choice and the review function of the court is to see that the agency's decision is within the range of discretion allowed by the more general policy of the statute."); *Free Oregon, Inc. v. Oregon Health Authority*, 329 Or App 460, 467-68, 541 P3d 897 (2023) (rejecting the argument that statutes had to confer specific authority with respect to vaccines because "the legislature opted to grant OHA 'full power in the control of communicable diseases,' without restricting the methods available to OHA"). That question, however, is not one that industry petitioners confront, and we do not think they could confront it in the vague, omnibus fashion in which they have chosen to bring their argument.

We decline to offer more extended discussion with respect to industry petitioners' third assignment of error. We note that industry petitioners make broad statements that do not engage with the text of any of the rules and they have not asked for us to invalidate only specific rules as beyond LCDC's statutory authority. However, under ORS 183.400(4), we are statutorily precluded from invalidating a rule unless it "[v]iolates constitutional provisions," "[e]xceeds the statutory authority of the agency," or "[w]as adopted without compliance with applicable rulemaking procedures." ORS 183.400(4) ("The court shall declare the rule invalid *only if* it finds that the rule \*\*\*." (Emphasis added.)). We are not at liberty to do what industry petitioners request and invalidate the entire package of CFEC rules based on broad arguments that do not engage with the text

---

[7] We note that the legislature has expressed several general policies within ORS chapter 197 that touch on the subject matter of the CFEC rules, including ORS 197.005 (legislative findings), ORS 197.010 (declaring legislative policy for land use), ORS 197.012 (encouraging compact urban development), and ORS 197.712 (directing LCDC to implement policies and requirements as to what is included in comprehensive plans). LCDC relies on both ORS 197.012 and ORS 197.712 for the CFEC rules.

of any rule and appear to actually pertain to only some unnamed subset of those rules. We are restricted to determining whether a rule, on its face, exceeds LCDC's statutory authority—generalized arguments about rules' purported effects on a jurisdiction do not suffice. *See, e.g.*, *Free Oregon, Inc.*, 329 Or App at 473 ("As we have mentioned, the scope of our review is limited to an evaluation of whether the rules, on their face, conflict with ORS 431.180. We are not called upon, and are not permitted within this proceeding, to evaluate the extent to which a particular application of the rules might contravene ORS 431.180[.]"). Nor will we dig into the text of particular rules called out as examples to determine if any of them should be invalidated for lack of authority when industry petitioners have not endeavored to do that for themselves and have not asked for that relief. *Beall Transport Equip. Co.*, 186 Or App at 700-01 n 2 ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself."); *cf. Corcoran v. Board of Nursing*, 197 Or App 517, 527-28, 107 P3d 627 (2005) (holding that an omnibus challenge to agency's findings of fact in a final order will be rejected as unreviewable).

We reject industry petitioners' third assignment of error.

### B.   *City Petitioners' Fifth Assignment of Error*

City petitioners make a different argument from that of the industry petitioners. They assert that the land use statutes set out a clear policy directive that delegates responsibilities between local governments and LCDC, with LCDC "to remain at a high level, providing goals and objectives where needed, but not meddling in how land use planning is done at the local level." They argue that the CFEC rules violate that policy by micromanaging decisions that are to be left at the local level. City petitioners acknowledge that not all of the CFEC rules exceed the authority of LCDC to set objectives but argue that LCDC should have to do the work of separating out the valid from the invalid rules on remand, because it is LCDC's burden to demonstrate statutory authority.

In support of city petitioners' position, *amicus* the League of Oregon Cities (League) filed a brief, arguing that LCDC has no authority to adopt the CFEC rules because (1) the CFEC rules violate legislative policy for local government control over land use planning, (2) no statute expressly or implicitly authorized adoption of the CFEC rules, (3) the CFEC rules contravene statewide land use planning goals, and (4) the CFEC rules implement an executive order and not statewide land use planning goals.

We reject city petitioners' and the League's arguments for much the same reasons that we rejected the arguments of industry petitioners. Both city petitioners and the League primarily assert that the CFEC rules invade the local land use province of local governments and that LCDC is restricted to setting broad objectives and goals. First, we are unpersuaded by their arguments that LCDC is as limited as they assert. Second, and more importantly, none of their arguments provide a basis on which we can invalidate all of the CFEC rules. Neither city petitioners nor the League engage with the actual text of the rules, nor do they identify any particular rules that are beyond LCDC's statutory authority, continuously arguing that we must invalidate all of the rules. As we explain above, we cannot invalidate any particular rule unless on the face of that rule it exceeds LCDC's statutory authority. *See* ORS 183.400(3), (4). In the absence of argument about the actual text of a challenged rule and why it exceeds, on its face rather than based on its asserted effect, LCDC's broad delegative authority to implement legislative policy expressed in ORS chapter 197, we do not discern a route to invalidating any of the CFEC rules.

C.  *City Petitioners' Sixth Assignment of Error*

In their final assignment of error, city petitioners argue that LCDC exceeded its statutory enforcement authority in enacting OAR 660-012-0920(7)(c). OAR 660-012-0920 is a new rule in the transportation division that directs LCDC to hold compliance hearings. Under OAR 660-012-0920, LCDC may hold compliance hearings if a city, county, or Metro has, among other things, "[f]ailed to comply with

a requirement in this division," OAR 660-012-0920(2)(d). Following such a hearing, ORS 660-012-0920(7) provides:

"(7)    If the commission finds a city, a county, or Metro out of compliance with the requirements of this division, the commission may use any authority granted to the commission, including but not limited to the actions below.

"(a)    Issue an order to remand a report with specific directions for changes necessary to comply with this division;

"(b)    Issue an enforcement order as provided in ORS 197.319 through 197.335;

"(c)    Issue an order to invalidate the acknowledgement of local transportation system plans that are not consistent with an approved Land Use and Transportation Scenario Plan; and

"(d)    Provide notice to the Oregon Department of Transportation and the United States Department of Transportation of the lack of compliance with state planning requirements."

City petitioners argue that LCDC does not have statutory enforcement authority to invalidate an acknowledged transportation system plan (TSP), which is the action listed in OAR 660-012-0920(7)(c). They argue that LCDC has a minor role in post-acknowledgement of plans and that nothing in ORS chapter 197 gives LCDC the authority to unilaterally change the local law that is an acknowledged land use plan. Instead, city petitioners assert, LCDC has a more limited statutory enforcement authority as provided in ORS 197.319 to 197.353.

LCDC responds that OAR 660-012-0920(7)(c) must be viewed in context, noting that that section only applies when the TSP is "not consistent with an approved Land Use and Transportation Scenario Plan." A Land Use and Transportation Scenario Plan (scenario plan) is a plan that the CFEC rules now require of local governments beyond the Portland Metro area. OAR 660-044-0110 - 660-044-0130. The scenario plan is a document that certain local governments must prepare and submit to LCDC for review. OAR 660-044-0120. Once the scenario plan is approved,

local governments must amend comprehensive plans, land use regulations, and TSPs to be consistent with the scenario plan and can only adopt amendments that are consistent with the scenario plan. OAR 660-044-130.

Given that context, LCDC argues that OAR 660-012-0920(7)(c) is just one enforcement option if a local TSP is inconsistent with the scenario plan. LCDC notes that the only way that would happen is if a local government obtained approval for a scenario plan but then declined to amend the TSP for consistency, as required by the rules. LCDC argues that it would not be changing local law by invalidating an inconsistent TSP, but that it would instead be ensuring that the inconsistent TSP did not continue to be in effect after approval of the scenario plan. LCDC argues that the enforcement authority in OAR 660-012-0920(7)(c) is "reasonably related" to ORS 197.320, which authorizes LCDC to issue orders to local governments. It asserts that the rule "fills the gap" that could arise if a local government obtains approval of a scenario plan and then fails to amend the TSP.

We agree with city petitioners. Unlike other topics in ORS chapter 197, the statutes governing LCDC's enforcement authority are specific, and OAR 660-012-0920(7)(c) is not consistent with them. *Planned Parenthood Assn.*, 297 Or at 565 (An agency exceeds its statutory authority if the rule "depart[s] from a legal standard expressed or implied in the particular law being administered, or contravene[s] some other applicable statute."). In particular the statute relied on by LCDC, ORS 197.320, provides:

> "The Land Conservation and Development Commission shall issue an order requiring a local government, state agency or special district to take action necessary to bring its comprehensive plan, land use regulation, limited land use decisions or other land use decisions or actions into compliance with the goals, acknowledged comprehensive plan provisions, land use regulations or housing production strategy if the commission has good cause to believe [setting out 13 types of noncompliance]."

That statute authorizes LCDC to order local governments, among others, to take actions to come into compliance.

Further, ORS 197.335(1) sets out what such an order must contain, which includes:

"(c)  The corrective action decided upon by [LCDC], including the specific requirements, with which the local government, state agency or special district must comply. In the case of a pattern or practice of decision-making that violates an acknowledged comprehensive plan or land use regulation, the commission may require revisions to the comprehensive plan, land use regulations or local procedures which the commission believes are necessary to correct the pattern or practice."

ORS 197.335 also sets out additional enforcement authority for LCDC that can help to ensure local government compliance:

"(3)(a)  If the commission finds that in the interim period during which a local government, state agency or special district would be bringing itself into compliance with the commission's order under ORS 197.320 or subsection (2) of this section it would be contrary to the public interest in the conservation or sound development of land to allow the continuation of some or all categories of land use decisions or limited land use decisions, *it shall, as part of its order, limit, prohibit or require the approval by the local government of applications for subdivisions, partitions, building permits, limited land use decisions or land use decisions until the plan, land use regulation or subsequent land use decisions and limited land use decisions are brought into compliance*. The commission may issue an order that requires review of local decisions by a hearings officer or the Department of Land Conservation and Development before the local decision becomes final.

"* * * * *

"(4)  As part of its order under ORS 197.320 or subsection (2) of this section, *the commission may withhold grant funds from the local government to which the order is directed*. As part of an order issued under this section, *the commission may notify the officer responsible for disbursing state-shared revenues to withhold that portion of state-shared revenues to which the local government is entitled* under ORS 221.770, 323.455, 366.762 and 366.800 and ORS chapter 471 which represents the amount of state planning

grant moneys previously provided the local government by the commission. * * *

"(5)(a)   As part of its order under this section, *the commission may notify the officer responsible for disbursing funds from any grant or loan made by a state agency to withhold such funds from a special district to which the order is directed*. The officer responsible for disbursing funds shall withhold funds as outlined in this section and shall release funds to the special district or department when notified to do so by the commission.

"* * * * *

"(6)   *The commission may institute actions or proceedings for legal or equitable remedies* in the Circuit Court for Marion County or in the circuit court for the county to which the commission's order is directed or within which all or a portion of the applicable city is located to enforce compliance with the provisions of any order issued under this section or to restrain violations thereof. Such actions or proceedings may be instituted without the necessity of prior agency notice, hearing and order on an alleged violation."

(Emphases added.) Those statutes expressly contemplate that the local government must take the corrective action ordered by LCDC; that is, it is the local government that must bring itself into compliance. What LCDC can do is include in its order the actions prescribed in ORS 197.335 to pressure the local government to comply. Those statues do not authorize LCDC to revoke an acknowledgement of a TSP, which is part of a local government's acknowledged comprehensive plan, OAR 660-012-0015(4). And we do not agree with LCDC that such revocation is reasonably related to an order directing the local government to take actions necessary to come into compliance. As a result, we conclude that OAR 660-012-0920(7)(c) exceeds LCDC's statutory authority and is invalid.

OAR 660-012-0830(1)(c) and OAR 660-012-0920(7)(c) held invalid; otherwise, CFEC rules held valid.